THE ATTORNEY GENERAL, EX REL. OTIS FULLER, v.
EUGENE PARSELL.

[See 98 Mich. 96; 99 Id. 381.]

*Constitutional law—Enactment of statute—Title—Repeal.*

1. A law cannot be defeated by the fact that a member of the
   Legislature, in calling up the bill, and referring to it by its
   right number, failed to state the title correctly, it appearing
   that the bill upon which the Legislature acted, and which was
   signed by the Governor, was properly entitled.

2. Act No. 118, Laws of 1893, entitled "An act to revise and con-
   solidate the laws relative to the State Prison, to the State
   House of Correction and Branch of the State Prison in the
   Upper Peninsula, and to the House of Correction and Reforma-
   tory at Ionia, and the government and discipline thereof, and
   to repeal all acts inconsistent therewith," covers the entire man-
   agement and control of and discipline in said penal institu-
   tions, and supersedes said laws, notwithstanding some of their
   provisions do not contravene those of the new act.

3. The failure to re-enact and publish at length said laws does not
   invalidate said act under section 25, art. 4, of the Constitution,
   which provides that "no law shall be revised, altered, or
   amended by reference to its title only, but the act revised, and
   the section or sections of the act altered or amended, shall be
   re-enacted and published at length."

4. With the reason entertained by the Legislature for the enact-
   ment of a law, courts have no concern, unless such reason
   appears upon the face of the law itself, or upon the legisla-
   tive journals; and not then, unless the purpose be one prohibited
   by the Constitution.

Information in the nature of *quo warranto* to test the
title to the office of warden of the State House of Correc-
tion and Reformatory at Ionia.    Argued April 3, 1894.
Judgment of ouster entered May 4, 1894.    The facts are
stated in the opinion, and in 98 Mich. 96, and 99 Id. 381.

*A. A. Ellis,* Attorney General (*Geer & Williams* and *William O. Webster,* of counsel), for relator.

*George E.* and *M. A. Nichols* (*F. A. Baker,* of counsel), for respondent.

GRANT, J. Two opinions have already been rendered in this case. *Fuller v. Attorney General,* 98 Mich. 96; *Attorney General v. Parsell,* 99 Id. 381. In the first of these cases, various questions were raised, and the constitutionality of the law (Act No. 118, Laws of 1893) was attacked. The cases required much labor, and covered all the issues of fact and of law then supposed to be involved. Under these decisions, nothing really remained but to enter a judgment of ouster. After the last opinion was filed, the respondent, without leave of the Court, filed an additional demurrer, and now challenges the validity of the act upon other grounds. If the position now taken by him be correct, it would, if raised upon the first hearing, have dispensed with all the other questions. We might with propriety hold the respondent estopped from raising these additional objections, and we should feel disposed to do so, were not the validity of an important statute involved.

1. The first objection now raised is that the act, as passed by the Legislature, is not the act as signed by the Governor. It is conceded that the body of the act, as passed and as signed, is identical in every respect, and that but one bill upon the subject was introduced, which was known as "Senate Bill No. 26," and "File No. 209." The question is raised upon the title to the act. The title, as introduced into the Senate, reads as follows:

"An act to revise and consolidate the laws relative to the State Prison, to the State House of Correction and Branch of the State Prison in the Upper Peninsula, and to the House of Correction and Reformatory at Ionia, and

the government and discipline thereof, and to repeal all acts inconsistent therewith."

Under this title the bill passed the Senate. Pending the question on agreeing to the title, the bill was laid on the table. The Senate journal shows that—

" Mr. Sabin moved to take from the table Senate bill No. 26 (file No. 209), entitled ' A bill to revise and consolidate the laws relative to the State Prison, to the State House of Correction and Branch of the State Prison in the Upper Peninsula, and to the House of Correction and Reformatory at Ionia, and the government and discipline thereof, and to repeal Act 213, Laws of 1875; also Act 176, Laws of 1877,—being chapters 340 and 341 of Howell's Annotated Statutes, and all laws amendatory thereof; also Act 258, Laws of 1887; also Act 140, Laws of 1891, approved June 17, 1891, and all acts inconsistent therewith,'—which motion prevailed. The question being on agreeing to the title of the bill, the title was agreed to."

For convenience, we will refer to them as the " short " and " long " title.

The House journal shows that the bill was sent from the Senate under the short title, above given, and was referred to the three committees on the penal institutions of the State. These committees reported the bill back to the House by the short title, and recommended its passage. The next record that appears in the journal is that " Mr. Sumner moved to take from the table Senate bill No. 26 (file No. 209)," giving the long title. The bill was then passed. It was returned from the House to the Senate under the short title, was engrossed and enrolled under that title, was presented to the Governor under that title, and approved. The acts referred to in the long title are those relating to the various institutions mentioned in the short title. The specific acts mentioned in the long title were as clearly superseded and repealed by the one title as by the other. How the long title came to be used by the members in making the motions referred to does not appear.

It is, however, perfectly clear that there was but one bill before the Legislature, and that the same act was duly passed and approved by the Governor. There is no record of any amendment. A law cannot be defeated by the fact that some member, in calling up the bill, and referring to it by its right number, failed to state the title correctly. We do not think the objection merits further comment.

2. The next argument against the validity of the law is that it is in violation of section 25, art. 4, of the Constitution, which provides that—

"No law shall be revised, altered, or amended by reference to its title only, but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length."

The precise contention, as stated by counsel for the respondent, is that the acts or parts of acts revised and consolidated are not re-enacted and published at length. It would seem in accordance with reason to hold that, when the Legislature revises and consolidates certain acts, and covers the entire subject, the act, as revised and consolidated, supersedes and repeals all other acts in relation thereto. The very terms "revise" and "consolidate" imply the intention to include in such act entire control over the subject, and to exclude all prior enactments. Cooley, Const. Lim. (6th ed.) 182 (note 4). The act in question contains 66 sections, and its provisions cover the entire management and control of and discipline in the penal institutions named. There is not a single provision of the former laws which is requisite or necessary for the management and control of these institutions.

But it is argued that the language in the repealing clause, that "all acts and parts of acts contravening any of the provisions of this act are hereby repealed," indicates an intention to retain those provisions of the old law which may be held not to conflict with the new. We are

of the contrary opinion. It would be unreasonable to hold that the Legislature, while covering the entire subject, and declaring its intention to be to revise and consolidate all the laws upon the subject, intended to leave in force any provisions of the former laws which the courts might determine did not contravene the provisions of the new act.

But, however this may be, the repealing section, when read as a whole, shows the understanding of the Legislature to be that the revised and consolidated act should supersede all other acts upon the subject. The repealing section closes with these words:

"But all proceedings pending, and all rights and liabilities existing, acquired, or incurred, at the time this act takes effect, are hereby saved, and such proceedings·may be consummated under and according to the law in force at the time such proceedings were commenced."

Counsel, both in their briefs and oral arguments, have argued that the purpose of this law was political, and that it was intended to retain certain provisions of the old law. With the reason entertained by the Legislature for the enactment of a law, courts have no concern, unless such reason appears upon the face of the law itself, or upon the legislative journals; and not then, unless the purpose be one prohibited by the Constitution. We have carefully examined the journals, and there is nothing appearing there, or upon the face of the law itself, which shows any of the purposes for which counsel have contended.

Mr. Justice COOLEY, under the title "Amendatory Statutes," in his valuable work on Constitutional Limitations, quotes from *People v. Mahaney,* 13 Mich. 497, as follows:

"The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become

apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another, in an act or section which was only referred to, but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation."

The learned author then adds:

"If this is a correct view of the purpose of the provision, it does not seem to be at all important to its accomplishment that the old law should be republished, if the law, as amended, is given in' full, with such reference to the old law as will show for what the new law is substituted."

Under a similar, but more restrictive, constitutional provision, the supreme court of Nebraska said:

"That an act, *complete in itself*, may so operate on prior acts as to materially change or modify them, without being within the mischief designed to be remedied by, or repugnant to, this provision of the constitution, is doubtless true." *Smails v. White*, 4 Neb. 357.

Applying that rule to this case, there is no room for holding that any one was, or can be, misled or deceived. Confusion can only be introduced into the law, in this case, by holding that the Legislature did not intend to revise and consolidate, but, on the contrary, did deliberately intend to introduce endless confusion into the law.

The law must be held valid, the relator entitled to the office, and judgment of ouster entered against the respondent, with costs.

LONG and HOOKER, JJ., concurred with GRANT, J.

MONTGOMERY, J. *(concurring)*. The facts are sufficiently stated in the opinion of Mr. Justice GRANT. From this statement, it appears that the title to the bill was never in fact amended. The bill continued to bear its original

title, in which it was introduced, and in which it was transmitted from the Senate to the House. The identity of the bill is clear, and there can be no doubt as to what bill both branches of the Legislature acted upon. The error of the clerk in transcribing the title, or the error of a member in calling up the bill, ought not to defeat the will of the Legislature, where it is clear that the bill upon which the Legislature in fact acted, and which the Governor signed, had a proper entitling. 'See opinions of CAMPBELL and CHRISTIANCY, JJ., in *People v. Supervisor of Onondaga,* 16 Mich. 258, 260.

I also concur in the view of Mr. Justice GRANT that the legislative intent to repeal all other statutes relating to the control and management of the institutions named in the title is clear. Respondent's counsel invoke the rule that where the later statute, covering the same subject-matter, has a repealing clause, repealing all acts and parts of acts inconsistent with the later enactment, the repealing clause is a limitation upon the extent to which it was intended that the former acts should cease to be operative; and there are cases which hold to this rule of construction where the other provisions of the later act do not make the legislative intent clear to supersede all prior provisions upon the general subject. See *Gaston v. Merriam,* 33 Minn. 271; *Lewis v. Stout,* 22 Wis. 234; *In re Henderson's Tobacco,* 11 Wall. 652. But as was said by Mr. Justice Strong in *U. S. v. Claflin,* 97 U. S. 551:

" While repeals by implication are not favored, and while it is held that a statute is not repealed by the later one containing no repealing clause, unless the later statute is positively repugnant to the former, or is a plain substitute for it, supplying its provisions, it is still true that repeal or no repeal, substitution or no substitution, is a question of legislative intention."

So, in the present case, the entitling of the act, which is an act to *" revise "* and *" consolidate "* the laws relating

to the subject, leaves little room for doubt that the purpose of the Legislature was to embody in the act itself all laws which should remain of force, relating to the control of the State institutions named. The use of the word " consolidate " indicates very clearly that the purpose of the Legislature was to collect in one act the law relating to the subject.

A very similar question arose in the case of *Tafoya v, Garcia,* 1 New Mex. 480. A statute was passed entitled " An act relative to the revision of the statutes." This was done upon the report of a commission empowered by law to collect, revise, and put into systematic order the laws then in force in the territory, and to recommend such changes and amendments of existing laws as the commission might deem necessary and proper to give effect to said laws, with a provision that said commission, on making their report to the Legislature of the revision of the laws proposed by them, should report at the same time the changes and amendments for adoption or rejection by the legislative assembly. The act bearing the above title, " Relative to the revision of the statutes," contained a preamble as follows:

"*Whereas,* the commission of revisers appointed by the governor have reported to this assembly, through the joint committee of both houses, a revision of the statutes of this territory: Therefore be it enacted that the revision of the statutes, commencing with article 1, and ending with article 67, with all and each of the articles and chapters inclusive, be, and the same are hereby, declared to be the revised statutes and laws of the territory of New Mexico, and as such shall have full force and effect in all courts thereof."

It was held that by the term " revised statutes " was not simply meant the compilation or collecting together of existing statutes, but also the amendation or expurgation

100 Mich.—12.

of such provisions as the revisers might deem unnecessary, and that the commissioners may have thought proper, in performing the duties required of them, to amend the statutes by omitting entire statutes in force, or parts of statutes, prior to the session of the legislature at which these revised statutes were adopted. The presumption is much stronger in the present case, when the title to the act indicates a purpose, not only to revise, but to consolidate, the laws relative to the government of these institutions.

In *Re Roberts*, 51 Mich. 548, the question arose as to whether an act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith, had the effect to repeal the provisions of a prior charter providing for a central station police court, and the trial of offenders therein. The later act contained no provision relating to this subject. It was contended that only such provisions of the earlier act as were inconsistent with the later were repealed, but it was ruled otherwise. Mr. Justice CAMPBELL, speaking for the Court, said:

"This charter is entitled 'An act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith.' It does not purport to be partial or supplementary, but to be the only charter. There can be no doubt of this purpose, and there can be no doubt that, without very manifest obligation, it cannot be admissible to select out of older charters matters omitted in this, as still in force. If this could be done on one subject, no one can see where the process would stop. There are many omitted provisions which no one would consider repugnant. We must assume that things omitted are designedly omitted."

This reasoning applies with peculiar force to the present case. The title to this act leaves no room to doubt the purpose of the Legislature to cover the whole subject of the government and control of these institutions. The rule

is well settled that, even though two acts are not repugnant, yet if the later covers the whole subject of the first, and contains provisions showing that it was a substitute, it will operate as a repeal.    See *Shannon v. People*, 5 Mich. 85; *Feige v. Railroad Co.*, 62 Id. 1.

The demurrer should be overruled, and judgment of ouster entered.

McGRATH, C. J., concurred with MONTGOMERY, J.