COUNCIL NO 23, LOCAL 1905, AMERICAN FEDERATION OF
STATE, COUNTY & MUNICIPAL EMPLOYEES v RECORDER'S
COURT JUDGES

Docket No. 57235. Argued March 4, 1976 (Calendar No. 10).—Decided
December 27, 1976. Rehearing denied 400 Mich 952.

Plaintiff Chase Osborn, IV, a probation officer in the Recorder's
Court of the City of Detroit and a member of plaintiff Council
No. 23, AFSCME, was discharged for misconduct and negli-
gence. There is no claim that Osborn's removal did not comply
with the statute providing the method of removal for probation
officers. Osborn was covered by a collective bargaining agree-
ment of the union with the Wayne County Board of Commis-
sioners, the Wayne Circuit and Probate Courts, and Common
Pleas Court and Recorder's Court of Detroit, which provided
that all actions disciplinary of employees shall be subject to a
grievance procedure. Plaintiffs AFSCME and Osborn com-
menced an original action in the Court of Appeals against the
Recorder's Court Judges seeking an order of mandamus direct-
ing the judges to submit to grievance arbitration under the
bargaining agreement. The Court of Appeals, Danhof, P. J., and
McGregor and M. F. Cavanagh, JJ., dismissed the complaint
(Docket No. 23668). Plaintiffs appeal. *Held:*

The decision of the Court of Appeals is affirmed.

Justice Lindemer, with Justices Coleman and Fitzgerald
concurring, would hold that the specific statutory provision for
discharge proceedings for probation officers prevails over the
more general grievance procedure of the public employment
relations act. The statutory procedure serves the same function
as a grievance procedure in private employment, insuring that
the employee is given a hearing at which he can present his
side of the dispute; the Legislature did not intend by the public

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4, 6, 7, 10–16] 48 Am Jur 2d, Labor and Labor Relations § 1191
*et seq.*

[2] 73 Am Jur 2d, Statutes §§ 392–407.

[5] 73 Am Jur 2d, Statutes § 321.

[8] 73 Am Jur 2d, Statutes § 37.

[9] 16 Am Jur 2d, Constitutional Law § 240 *et seq.*

employment relations act to encumber the judicial process with a grievance arbitration procedure.

Justice Williams, also writing to affirm, wrote that there is no positive repugnancy between the public employment relations act and the statute prescribing the procedure for removal of probation officers such that the former statute repeals the latter by necessary implication. A legislative intention to delegate to a private arbitrator the power to remove or reinstate so sensitive a judicial official as a probation officer, because of the constitutional problem of delegation of public power to a private person, cannot be presumed absent specific statutory language to that effect setting forth the manner and standards under which the arbitrator should act. Review by binding arbitration under a collective bargaining agreement of a decision by the Corrections Commission to remove a probation officer upon recommendation of the Recorder's Court of Detroit after notice and hearing pursuant to the probation officer removal statute is not in order.

Justice Levin, with whom the Chief Justice and Justice Ryan concurred, dissented:

1. Grievance and other disciplinary procedures are terms or conditions of employment within the meaning of the public employment relations act (PERA). Court employees are public employees within the meaning of PERA. Therefore, grievance and disciplinary procedures for court employees are subjects of mandatory collective bargaining in good faith under the statute. The County of Wayne and the Recorder's Court Judges were not obligated to agree to a grievance procedure terminating in final and binding arbitration, but by so agreeing, they have provided a means by which a probation officer may obtain *de novo* consideration of a removal determination.

2. The specific statutory provision does not necessarily govern over the more general provision of the PERA. The two may be reconciled by using both the statutory and grievance procedures. What cannot be consistently reconciled are the concepts that grievance arbitration may dominate, by reason of the PERA, in some areas of the public sector, although there is an earlier enacted statutorily prescribed removal procedure, but does not in this area because there is an earlier enacted statutorily prescribed procedure.

3. There is no basis for distinguishing between the judiciary and other public employers in resolving the question whether compulsory grievance arbitration is a valid term in a collective bargaining agreement. The Recorder's Court Judges have not shown that the duty to bargain, the agreement reached provid-

ing a grievance procedure terminating in final and binding arbitration or the implementation of that agreement has inhibited the discharge of their constitutional function. A fairly administered grievance arbitration procedure for probation officers would not so burden the exercise of the constitutionally conferred powers of the judiciary as to warrant a declaration of unconstitutionality.

Opinion by Lindemer, J.

Coleman and Fitzgerald, JJ.

1. Labor Relations—Public Employment—Probation Officers—
Disciplinary Procedures.

*The statutory provision for discharge proceedings for probation officers of the courts prevails over the more general grievance procedure of the public employment relations act (MCL 423.215, 771.10; MSA 17.455[15], 28.1140).*

Separate Opinion

Williams, J.

2. Statutes—Construction—Repeal by Implication.

*There is no repeal by implication of an earlier statute by a later statute unless there is positive repugnancy between express provisions of the statutes to the extent that they cannot stand together, or be consistently reconciled.*

3. Labor Relations—Public Employment—Court Employees—Disciplinary Procedures—Statutes.

*There is no positive repugnancy between the public employment relations act permitting collective bargaining over the disciplining of probation officers and a specific statute controlling removals of probation officers from employment such that the former statute repeals the latter statute by necessary implication (MCL 423.201 et seq., 771.10; MSA 17.455[1] et seq., 28.1140).*

4. Labor Relations—Public Employment—Probation Officers—
Constitutional Law—Delegation of Power—Arbitration.

*A legislative intention to delegate to a private arbitrator the power to remove or reinstate so sensitive a judicial official as a probation officer, because of the constitutional problem of delegation of public power to a private person, cannot be presumed absent specific statutory language to that effect setting forth the manner and standards under which the arbitrator should act (MCL 771.10; MSA 28.1140).*

5. STATUTES—CONSTRUCTION—IN PARI MATERIA.

*Two statutes on the same subject generally shall be construed together so as to give meaning and validity to both if at all possible.*

6. LABOR RELATIONS—PUBLIC EMPLOYMENT—PROBATION OFFICERS—COLLECTIVE BARGAINING.

*The Recorder's Court of Detroit and its probation officers can bargain collectively about all subjects that the Legislature and the Constitution permit; for example, they can bargain collectively about binding arbitration, but they cannot bargain about matters otherwise reserved by the Legislature or Constitution, such as whether probation officers could prescribe sentences.*

7. LABOR RELATIONS—ARBITRATION—PUBLIC EMPLOYMENT—COLLECTIVE BARGAINING.

*Binding arbitration for public employees is a "condition of employment" and thus a mandatory subject of collective bargaining within the meaning of the public employment relations act (MCL 423.215; MSA 17.455[15]).*

8. STATUTES—CONSTRUCTION—CONSTITUTIONAL QUESTION.

*A statutory construction which avoids a constitutional question will generally be preferred over one which does involve such a question.*

9. CONSTITUTIONAL LAW—DELEGATION OF POWER—ARBITRATION—VALIDITY.

*The criteria used to make a judgment as to whether constitutional protections have been observed in delegation of power to an arbitrator fall in four categories: (1) proximity of those performing the delegated duty to the elective process; (2) sufficiency of standards of delegation and judicial review; (3) length of tenure and character of job; (4) kind of power delegated; no single criterion is wholly dispositive, but it is the total effect of all the criteria that affects the balance of judgment.*

10. LABOR RELATIONS—PUBLIC EMPLOYMENT—STATUTES.

*The public employment relations act is the dominant law regulating public employee labor relations (MCL 423.201 et seq.; MSA 17.455[1] et seq.).*

11. LABOR RELATIONS—PUBLIC EMPLOYMENT—PROBATION OFFICERS—DISCIPLINARY PROCEDURES.

*Review by binding arbitration under a collective bargaining agreement of a decision by the Corrections Commission to remove a probation officer upon recommendation of the Record-*

er's Court of Detroit after notice and hearing pursuant to the probation officer removal statute is not in order (MCL 771.10; MSA 28.1140).

DISSENTING OPINION

KAVANAGH, C. J., and LEVIN and RYAN, JJ.

12. LABOR RELATIONS—PUBLIC EMPLOYMENT—COURT EMPLOYEES.

Court employees are public employees within the definition of the public employment relations act and the state Constitution (Const 1963, art 4, § 48; MCL 423.201 et seq.; MSA 17.455[1] et seq.).

13. LABOR RELATIONS—MUNICIPAL CORPORATIONS—DISCIPLINARY PROCEDURES—PUBLIC EMPLOYMENT—COLLECTIVE BARGAINING.

Grievance and disciplinary procedures for public employees are "other terms or conditions of employment" and thus mandatory subjects of collective bargaining within the meaning of the public employment relations act (MCL 423.201 et seq.; MSA 17.455[1] et seq.).

14. LABOR RELATIONS—PUBLIC EMPLOYMENT—DISCIPLINARY PROCEDURES—STATUTES—COLLECTIVE BARGAINING.

The public employment relations act is the dominant law regulating public employee labor relations, and the fact that there is a statutory procedure for removal of certain public employees does not bar, in a collective bargaining agreement negotiated under the act by a public employer, a provision for binding grievance arbitration concerning the removal of those employees (Const 1963, art 4, § 48; MCL 423.201 et seq.; MSA 17.455[1] et seq.).

15. LABOR RELATIONS—PUBLIC EMPLOYMENT—COURT EMPLOYEES—CONSTITUTIONAL LAW—SEPARATION OF POWERS.

The doctrine of separation of powers does not preclude the enactment of laws regulating the employment of public employees who serve the courts; the judiciary does not necessarily have the exclusive constitutional power to appoint and remove public employees of the court.

16. LABOR RELATIONS—PUBLIC EMPLOYMENT—COURT EMPLOYEES—DISCIPLINARY PROCEDURES—CONSTITUTIONAL LAW.

A declaration of unconstitutionality of a grievance procedure terminating in final and binding arbitration for a court employee removed by the court pursuant to a statutory procedure is not warranted where the court has not shown that the duty

> *to bargain, the agreement on the grievance procedure, or the*
> *implementation of that agreement inhibited the discharge of its*
> *constitutional function.*

*Zwerdling, Maurer & Papp* for Council No. 23,
Local 1905, AFSCME.

*Alphonso R. Harper* for Recorder's Court Judges.

LINDEMER, J. *(to affirm).* We believe the Record-
er's Court Judges were justified in refusing to
enter into binding arbitration on the grievance
filed by Chase S. Osborn, IV. Appellant Osborn
was discharged from employment as a probation
officer pursuant to the provisions of MCLA 771.10;
MSA 28.1140. The dissent finds § 15 of PERA
controls and would order the Recorder's Court
Judges to submit to binding arbitration. In so
holding, they have resolved a conflict between two
state statutes in favor of PERA, the more general
statute. This is in violation of the rule that

"In case of conflict between 2 such legislative enact-
ments the special statute or code must prevail. This is
the commonly-accepted view in dealing with such con-
flicts. In *Attorney General, ex rel Owen v Joyce,* 233
Mich 619 [207 NW 863 (1926)], the rule suggested was
applied although the special law preceded in its enact-
ment the general statute." *Imlay Twp School Dist v
State Bd of Ed,* 359 Mich 478, 485; 102 NW2d 720
(1960).

We believe the specific provision of MCLA
771.10; MSA 28.1140 should be held to be the only
procedure necessary for the discharge of a proba-
tion officer. Probation officers are agents of the
courts. While the Michigan Corrections Commis-
sion is charged with the duty of appointment and
removal of probation officers, they do so at the

recommendation of the judges. Probation officers perform duties particularly central to the administration of criminal justice. MCLA 771.14; MSA 28.1144 directs that a probation officer must conduct a presentence investigation and report this information to the trial judge. (Perhaps under the dissenting opinion AFSCME could force the Recorder's Court Judges to collectively bargain on whether or not they would have to continue to prepare presentence reports.) Judges must place great reliance on the ability of their probation officers to prepare accurate reports for use at sentencing. Additionally, probation officers are required to supervise persons placed on probation under the regulations as prescribed by the courts. A judge's ability to discharge his judicial functions can be affected by the capability of his probation officer.

In the private sector, the grievance procedure is necessary to guarantee that an employee cannot be terminated at the whim of an employer. Grievance procedures insure that the employee is given a hearing at which he has an opportunity to present his side of the dispute. In the present case, MCLA 771.10; MSA 28.1140 serves that function. It guarantees the probation officer a full hearing at which the court must determine the probation officer was guilty of incompetence, misconduct, neglect of duty or refusal to carry out the order of the court before it can recommend removal. Submission of that decision to a grievance procedure with binding arbitration could result in a reinstatement of a probation officer in which the court could no longer place trust or confidence. We cannot accept that the Legislature in adopting § 15 of the PERA in 1965 meant to encumber the judicial process in such a manner.

We would affirm the Court of Appeals.

COLEMAN and FITZGERALD, JJ., concurred with LINDEMER, J.

WILLIAMS, J. *(to affirm)*. The basic legal issue in this case is whether there is such a *positive repugnancy* between the provisions of the public employees relations act (PERA)[1] and the probation officer removal statute[2] that PERA repeals the probation officer removal statute by necessary implication. The factual question posing the legal question is whether there must be binding arbitration pursuant to the bargaining agreement between Recorder's Court and its employees to review whether the court properly removed a probation officer following the procedures of the probation officer removal statute.

My Brother LEVIN's opinion holds that the subsequent PERA supersedes the probation officer removal statute because of "the apparent legislative intent that the PERA be the governing law for public employee labor relations", and the Recorder's Court must proceed to arbitration. *Rockwell v Crestwood School District Board of Education,* 393 Mich 616, 629; 227 NW2d 736 (1975). My Brother LINDEMER's opinion, on the other hand, holds that a specific prior statute like the probation officer removal statute cannot be overruled by a general statute like PERA, and that the Recorder's Court properly removed plaintiff Osborn and is not subject to review by arbitration. *Imlay Twp School District v State Board of Education,* 359 Mich 478, 485; 102 NW2d 720 (1960).

As indicated above this opinion reverts to the

---

[1] MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*
[2] MCLA 771.10; MSA 28.1140.

basic doctrine underlying the rules my brothers rely on, to wit, that there is no repeal by implication unless there is *positive repugnancy* between the later and earlier statutes. That is the way legislative intention is expressed. That is the foundation for the rule that normally a general statute does not repeal a specific one.

Examination of PERA under this rule fails to disclose any specific preemption in the field of employee removal or review by arbitration of such removal that would create a positive repugnancy and repeal by implication the probation officer removal statute. Supporting this finding is the consideration that legislative intention to delegate to a private person the power to remove or reinstate so sensitive a judicial official as a probation officer, because of constitutional implications, could not be presumed absent specific language to that effect.

## I—FACTS

To rehearse the facts in any detail would be redundant, as Justice LEVIN has fairly and adequately set them forth. Suffice it to say, the Recorder's Court judges after notice and hearing and finding plaintiff probation officer "incompetent or * * * guilty of misconduct, neglect of duty or refusal to carry out the order of the court" recommended plaintiff probation officer to the Corrections Commission for removal pursuant to the probation officer removal statute. Plaintiff AFSCME filed a grievance requesting arbitration pursuant to their bargaining agreement. The Recorder's Court relying on the probation officer removal statute declined to submit to arbitration. Plaintiffs thereupon unsuccessfully sought mandamus in the Court of Appeals.

## II—Applicable Law

In the final analysis what this case involves is whether there is repeal by implication. In the ideal situation, the Legislature enacts new laws either covering fresh areas or specifically repealing former acts covered by the new legislation. The reality is, of course, that that is not what always happens. The courts therefore have evolved rules to construe old laws in light of new ones.

The most fundamental rule for the construction of two statutes covering the same subject generally is that they must be construed together to give meaning to both, if that is at all possible. *Borden, Inc v Department of Treasury,* 391 Mich 495, 523; 218 NW2d 667 (1974). The correlative of this is that there is a presumption against repeal by implication. 1A Sutherland Statutory Construction (Sands, 4th ed), § 23.10.

If it does not appear that two statutes can be construed together, the next question is does the later statute repeal the prior statute by implication. 21 Michigan Law & Practice, Statutes, §§ 63, 64. The general rule as to repeal by implication was well stated in *Edwards v Auditor General,* 161 Mich 639, 644–645; 126 NW 853 (1910), as follows:

"Repeals by implication are not favored. A statute can be repealed only by an express provision of a subsequent law, or by necessary implication through a *positive repugnancy* between provisions of the latter and former enactment, to such an extent that they cannot stand together, or be consistently reconciled." (Emphasis added.)

The subsequent statute in that case required certain officials having in their control the bodies of

unknown dead to ship them to the University of Michigan; the prior statute permitted the justice of the peace to hold inquest and bury the bodies of unknown dead. No repugnancy was found. This case also referred to the specific statute prevailing over the subsequent general one. See also *Connors v Carp River Iron Co,* 54 Mich 168, 171; 19 NW 938 (1884).

### III—APPLICATION OF LAW TO CASE FACTS

Turning then to analysis of whether the subsequent PERA repeals by implication the probation officer removal statute, we must bear three rules in mind. First, two statutes must be construed together if that is at all possible. Second, "[r]epeals by implication are not favored". Third, "[a] statute can be repealed only * * * by necessary implication through a *positive repugnancy* * * * to such an extent that they cannot stand together".

Our analysis permits PERA and the probation officer removal statute to stand together. The public employer, the Recorder's Court, and the public employees, the probation officers, can bargain collectively about all subjects that the Legislature and the Constitution permit them to bargain on. They can even bargain about binding arbitration so long as they do not bargain about matters otherwise reserved by the Legislature or the Constitution, for example, they obviously couldn't bargain or arbitrate whether probation officers could prescribe sentences.

By so construing the statutes together, we have followed the first two pertinent dictates of statutory construction. We have construed the two statutes together giving meaning to both. We have not favored repeal by implication. The third rule remains—are we required to repeal the earlier

statute "by necessary implication through a positive repugnancy * * * to such an extent that they cannot stand together".

We have already answered the latter part of the third rule by saying the statutes can stand together so we proceed to the first part, is there "a positive repugnancy"? Whether or not there is a *positive repugnancy* must be derived from examining the provisions of the two statutes.

The probation officer removal statute reads as follows:

"The Michigan corrections commission shall have the power to remove such officer or officers for incompetency, misconduct or failure to carry out the orders of the court, or neglect of any duty. Such removal may be made upon the certification of the judge or judges of the court under whom such probation officer acts, which certificate shall set forth that a full hearing has been had before said judge or judges and as a result thereof the court has determined that such probation officer is incompetent or has been guilty of misconduct, neglect of duty or refusal to carry out the order of the court. The Michigan corrections commission shall remove such officer or officers appointed by it upon the recommendation of the judge or judges of courts of cities having a population in excess of 250,000 inhabitants upon, and only upon, the filing of such certificate above mentioned." MCLA 771.10; MSA 28.1140.

Noteworthy is that the statute is very explicit. It prescribes specifically who shall do exactly what to whom under well defined standards. It prescribed specifically that in a city of over 250,000 like Detroit the Corrections Commission shall remove upon specifically arrived at recommendation.

Since repeals by implication are not favored, any subsequent statute that would repeal so specific a legislative enactment must be very specific and

clear cut to necessarily create a *positive repugnancy.* But with reference to the facts of this case, PERA is far from specific and clear cut. Quite the contrary.

The fact of the matter is that PERA does not directly mention removal procedures or binding arbitration at all. However, this Court held in *Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674; 246 NW2d 831 (1976), "conditions of employment" about which a public employer must bargain included binding arbitration. MCLA 423.215; MSA 17.455(15).

The language of the most nearly pertinent section of PERA is as follows:

"A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and *other terms and conditions of employment,* or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession." MCLA 423.215; MSA 17.455(15). (Emphasis added.)

The specificity of this language, or lack thereof, certainly does not create a positive repugnancy between it and the very specific language of the probation officer removal statute. Therefore we cannot find a repeal by necessary implication through positive repugnancy.

None of the cases cited in Justice LEVIN's opinion establishes a positive repugnancy between PERA and the probation officer removal statute. We approvingly agree they indicate a strong legislative policy to put public employee relations generally under PERA, but they do not set forth a positive repugnancy as to removals or arbitration because it is perfectly possible to bargain about binding arbitration generally without bargaining about, or adopting an agreement relative to, probation officer removal, a subject on which the Legislature has specifically expressed its intentions.

In *Wayne County Civil Service Commission v Board of Supervisors,* 384 Mich 363; 184 NW2d 201 (1971), this Court had to decide which of two agencies was the public employer under PERA, the Civil Service Commission or the Wayne County Supervisors, the operating agency that controlled and directed Wayne County public employees. In short, there were no two ways about the decision, either the Civil Service Commission or the Board of Supervisors was the public employer, they couldn't both be. There was the positive repugnancy our rule of construction requires. There certainly is not such a positive repugnancy in this case.

*Judges of the 74th Judicial District v Bay County,* 385 Mich 710; 190 NW2d 219 (1971), is pertinent only in that it held court employees were public employees of the court as a public employer.

*Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674; 246 NW2d 831 (1976), held that binding arbitration was a subject public employers must bargain about, no more.

IV—PUBLIC EMPLOYEES AND PRIVATE ARBITRATION

Fair construction of the comparison of the two

statutes involved is really sufficient to indicate there is no positive repugnancy permitting repeal by implication. However, there is another significant reason supporting this conclusion. It is a general rule of statutory construction that a construction which avoids a constitutional question will be preferred over one that does involve such a question. *Attorney General ex rel Fuller v Parsell,* 100 Mich 170, 174; 58 NW 839 (1894).

Any construction permitting binding arbitration in this case raises the serious question whether the Legislature can constitutionally delegate to a private person, such as an arbitrator in this case, so sensitive a power as the reinstatement of a probation officer upon whose recommendation a sentencing judge so heavily depends, especially after a court has duly found that officer guilty of "incompetency, misconduct or failure to carry out the orders of the court, or neglect of any duty". With such a potential constitutional problem, whether the Legislature can so act or not, it is highly improbable that the Legislature would legislate without very specifically setting forth the manner and standards under which the action should take place. We have seen that in PERA specific mention was made neither of how removals of any public employees should be consummated nor of binding arbitration about such removals. Consequently, under these circumstances we should not presume that the Legislature intended to repeal its earlier specific action.

General concern about private arbitrators arbitrating public employee questions was expressed in *Dearborn Fire Fighters Union Local No 412, IAFF v Dearborn,* 394 Mich 229, 291, 314–315; 231 NW2d 226 (1975), in the Levin and Williams

opinions.[3] The Williams opinion set out four criteria as to the propriety of arbitration under the Michigan compulsory arbitration statute as follows:

1—Proximity to elective process.
2—Sufficiency of standards of delegation.
3—Tenure and public exposure.
4—Kind of power delegated.

Before examining these criteria it is recognized that the instant case differs from *Dearborn* in two respects. First, in *Dearborn* the arbitrators were appointed by specific statutory process, while in the instant case the arbitrators would be appointed pursuant to a bargaining agreement entered into as a result of PERA. Second, in *Dearborn interest* arbitration was involved whereas in the instant case *grievance* arbitration is involved. While these factors make the two cases different, they do not diminish the validity of the criteria established in *Dearborn.* Certainly both factors must be considered in weighing the four criteria.

In this case the arbitrator is a private person without public appointment and could be chosen by the parties with no special regard for the overall public interest. As a consequence, the proximity to the elective process and public responsibility is much more distant than in *Dearborn* where for default of the city to designate an arbitrator the Chairman of the Michigan Employment Relations Commission was authorized by statute to make the appointment and did.

On the other hand, grievance arbitration is usually considered less sensitive than interest arbitra-

---

[3] This was a non-majority opinion case. Justices Levin and the Chief Justice found the Michigan compulsory arbitration act unconstitutional. Justice Coleman found it constitutional. Justice Williams found it constitutional when the Chairman of MERC appoints the arbitrator.

tion as far as the general public interest is concerned.[4] Certainly that would be true, for example, if the issue were whether an employee should receive a two-day suspension without pay or a reprimand. However, as in this case, whether an employee can be reinstated in a sensitive position where his findings of fact and recommendations are the almost exclusive basis for sentencing decision by a judge is a matter involving a very significant degree of public concern.

Reviewing then the four *Dearborn* criteria reflecting upon public responsibility, we have already discussed somewhat the first. The arbitrator here is a private person chosen by the court and its employees. There is no appointment by an elected public official or by a public official appointed by an elected public official who is not specifically interested in this case. There is therefore no apparent or necessary responsibility to the general public.

As to sufficiency of standards of delegation, there is no reference to binding arbitration in PERA. The right to binding arbitration can be properly implied, but the point is that PERA does not set forth any standards covering the manner in which arbitration shall be conducted. The public interest therefore must rest with the professionalism and conscience of the individual arbitrator.

As to tenure and public exposure, there is no indication that the tenure of the arbitrator is for more than the particular dispute. The likelihood that there would be any great public interest in the disposition of this or similar cases is not immediately evident. Consequently, the public hold on the arbitrator is not very strong.

---

[4] Justice Levin has not spoken to his concern, if any, about grievance arbitration.

Finally, as to the power delegated, that point has also been briefly discussed above. The power to arbitrate whether or not there should be a short suspension or something of that sort would probably involve no great public concern. On the other hand, the reinstatement of a public officer in a position as sensitive as a probation officer might very seriously affect a real public concern. Such concern was manifested, of course, in the enactment of the probation officer removal statute.

Weighing all these four factors together, it cannot be said much provision has been made to insure the public responsibility of the arbitrator. This is not to disparage the public conscience of any arbitrator, it is only to point out that there are no effective legislative safeguards to protect the public interest. We do not here decide whether binding arbitration under these circumstances is constitutional or not. That must wait for a later case where the matter is fully briefed and argued. The purpose for this consideration at this time is to determine whether the Legislature should be presumed to have raised the possibility of such a constitutional problem without using more specific language than appears in PERA. We do not believe such an assumption is proper and that statutory construction would require us to adopt a construction not raising such a constitutional problem.[5]

[5] This opinion does not attempt to rule on constitutionality as it was not argued below. It does, however, attempt to call attention again to a matter that has inherent potential of seriously affecting the public interest so that such consideration shall be given the subject as the matter deserves.

Had this Court decided PERA controlled, the writer of this opinion would have remanded to the trial court so that the issue of public responsibility in arbitrating this particular matter would have been fully briefed and argued and so that a decision on the constitutional question could have been properly considered.

## V—CONCLUSION

We agree with Justice LEVIN that the Legislature intended PERA to cover public employee relations generally. However, we believe we can construe PERA and the probation officer removal statute together so as to give meaning to both.

In doing so, we satisfy the first pertinent rule of statutory construction, namely to construe statutes together, if possible, as well as the second pertinent rule that repeals by implication are not favored. Furthermore, pursuant to the third pertinent rule that repeal by implication will not be considered absent positive repugnancy, we find that there is no positive repugnancy between the very specific provisions of the probation officer removal statute and the general or non-existent provisions of PERA on the same subject.

In addition, we find that the holding of non-repeal is buttressed by the consideration that it will not be presumed that the Legislature intends to provoke a constitutional problem especially without specific language to that effect and that plaintiffs' construction of these statutes would raise the problem, whether the Legislature is delegating sensitive public power to a private person and without any controlling standards of public accountability.

With these considerations, we therefore hold (1) that PERA and the probation officer removal statute must be construed together (2) that there is no repeal by implication and (3) that review by binding arbitration of the decision to remove plaintiff probation officer by the Corrections Commission upon recommendation of the Recorder's Court after notice and hearing pursuant to the probation officer removal statute is not in order.

The Court of Appeals is affirmed. No costs, a public question.

Levin, J. *(dissenting).* In *Pontiac Police Officers Association v Pontiac,* 397 Mich 674; 246 NW2d 831 (1976), we held that grievance and other disciplinary procedures are "other terms and conditions of employment" within the meaning of the PERA and that the duty to bargain collectively on such issues and to perform in accordance with the terms of a collective bargaining agreement prevails over conflicting provisions of the charter of a home-rule city.

This appeal raises the related question whether the provisions of a statute providing for the removal of probation officers bars implementation of a provision in a collective bargaining agreement providing a grievance procedure terminating in final and binding arbitration.

I

A collective bargaining agreement was entered into, effective July 1, 1973, for a term of three years, between the Board of Commissioners of Wayne County, the circuit and probate courts for that county, the Common Pleas Court and the Recorder's Court for the City of Detroit, as the employers, and Council No. 23, affiliated with the American Federation of State, County and Municipal Employees (AFSCME), as the union.[1]

The agreement provides that "[a]ll disciplinary

---

[1] The signatories include the four courts. Judge Bowles signed in behalf of the Wayne Circuit Court, Judge Connolly in behalf of the Common Pleas Court, Judge Ira G. Kaufman in behalf of the probate court, and Judge Joseph A. Gillis in behalf of the Recorder's Court.

actions shall be subject to the Grievance Procedure".[2] The grievance procedure terminates in final and binding arbitration and may be invoked by an employee who believes "he has cause for a grievance on any matter concerning his employment with the employer". A "probation officer" is an employee covered by the agreement.

Chase Osborn, IV, a probation officer in the Recorder's Court of the City of Detroit and a member of the bargaining unit covered by the collective bargaining agreement, was discharged November 6, 1974 for misconduct and negligence.

A statute provides that the Michigan Corrections Commission shall have the power to remove a probation officer "upon the certification of the judge or judges of the court * * * that a full hearing has been had before said judge or judges and as a result thereof the court has determined that such probation officer is incompetent or has been guilty of misconduct, neglect of duty or refusal to carry out the order of the court".[3]

It is not claimed that Osborn's removal was not in accordance with the requirements of this statute.

A grievance requesting arbitration was filed by AFSCME on Osborn's behalf on November 15, 1974. The Recorder's Court responded that Osborn was removed under authority of the statute and "as the collective bargaining contract cannot su-

---

[2] The agreement also provides that "[an] employee shall lose his seniority for the following reasons only:

"(a) Resignation or voluntary quits.

"(b) Discharge or permanent removal from the payroll and the separation is not reversed through the grievance procedure.

* * *

"B. Loss of seniority under the above provisions are [sic] subject to the Grievance Procedure."

[3] MCLA 771.10; MSA 28.1140.

persede the statute, the Court will not submit to arbitration".

AFSCME and Osborn commenced this action in the Court of Appeals as an original action against the Judges of the Recorder's Court for the City of Detroit[4] seeking an order to show cause why an order of mandamus should not issue directing the Recorder's Court Judges to submit to grievance arbitration. The Court of Appeals declined to issue a show cause order "for lack of merit in the grounds presented".

AFSCME contends that the PERA imposes an obligation on public employers to bargain collectively with public employee bargaining units. The PERA provides that "to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder".[5] This language, which is the same as § 8(d) of the Federal Taft-Hartley Act,[6] imposes, AFSCME contends, an obligation to bargain concerning grievance arbitration.[7]

AFSCME contends that there is no conflict between the statute concerning removal of probation officers and the arbitration grievance procedure under the contract. The statute prescribes the procedure to be followed by the Recorder's Court

---

[4] Actions for mandamus against a state officer are required to be brought in the Court of Appeals. GCR 1963, 714.1.

[5] MCLA 423.215; MSA 17.455(15).

[6] 29 USC 158(d).

[7] The union relies on *United Steelworkers v Warrior & Gulf Navigation Co*, 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *United Steelworkers v American Manufacturing Co*, 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960); *United Steelworkers v Enterprise Wheel & Car Corp*, 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960).

to remove a probation officer. The grievance-arbitration clause of the contract "is not even triggered until after the termination of an employee becomes final".

The judges respond that the provision of the statute providing for removal of probation officers imposes a nondelegable duty on the judges to conduct such hearings and, therefore, under a saving provision of the collective bargaining agreement, removal of probation officers is not subject to arbitration.[8]

The PERA does not expressly authorize grievance arbitration. The statute providing for removal of probation officers specifically deals with the subject matter. The judges contend that the specific statute prevails over the general.

The judges also assert that application of the arbitration provision in this case would be repugnant to Const 1963, art 6, § 1: "The judicial power of the state is vested exclusively in one court of justice". The preparation of presentence reports and the supervision of probationers is an aspect of the sentencing power vested in the judiciary. The judicial power includes the power to determine who will assist in carrying out that function and to discipline or remove those found after a hearing to be unfit. The PERA should be construed to avoid conflict between its provisions and the judicial article.

II

This Court has said: "Court employees are public employees within the definition of [the PERA] and

---

[8] "The arbitrator shall be without authority to require the employer to delegate, alienate or relinquish any powers, duties, responsibilities, obligations or discretions which by state law or state constitution the employer cannot delegate, alienate or relinquish."

art 4, § 48 of the Michigan Constitution". *Judges of the 74th Judicial District v Bay County,* 385 Mich 710, 725; 190 NW2d 219 (1971).

In *Pontiac Police Officers v Pontiac, supra,* we concluded that disciplinary procedures and a proposal for final and binding grievance arbitration concern "other terms and conditions of employment" and are a mandatory subject of collective bargaining under the PERA.

The County of Wayne and the judges of the several courts agreed, in the collective bargaining agreement with AFSCME, that "[a]ll disciplinary actions" would be subject to a grievance procedure terminating in final and binding arbitration.

Under the statute a probation officer may not be removed except in accordance with the procedure there prescribed. By agreeing to a grievance procedure terminating in final and binding arbitration, the county and the judges have provided a means by which a probation officer may obtain *de novo* reconsideration of the removal determination.

The County of Wayne and the Recorder's Court Judges were not obligated under the PERA to agree to the grievance arbitration procedure proposed by AFSCME. The obligation under the act was to bargain in good faith.

III

While the PERA is a general statute and the statute providing a procedure for removal of probation officers is specific it does not follow that the specific statutory provision governs.

The powers of the Wayne County Civil Service Commission are set forth in a specific statute. In *Wayne County Civil Service Commission v Board of Supervisors,* 384 Mich 363, 374; 184 NW2d 201

(1971), this Court held that the original authority
and duty of the Wayne County Civil Service Com-
mission "was diminished *pro tanto,* by the [PERA],
to the extent of free administration of the latter
according to its tenor".

The power of a school district to discharge a
tenured teacher, the standard ("reasonable and
just cause"), the procedure and powers of the State
Tenure Commission to review a discharge decision
are set forth in a specific statute, the teachers'
tenure act.[9] In *Rockwell v Crestwood School Dis-
trict Board of Education,* 393 Mich 616, 629, 630;
227 NW2d 736 (1975), we held that the PERA
superseded the provisions of that act when the
discharge is for concerted strike activity.

We agree that, in this instance, the PERA and
the earlier, specific, statute concerning probation
officer removal can be "consistently reconciled",
*Edwards v Auditor General,* 161 Mich 639, 644–
645; 126 NW 853 (1910), and given "harmonious
operation and effect" and "consonant operation",
1A Sutherland's Statutory Construction (Sands,
4th ed), § 23.10, and that, therefore, there is no
"positive repugnancy", *Edwards v Auditor Gen-
eral, supra.*

Under our reconciliation, the statutory and
grievance procedures may both be utilized. Under
our colleague's reconciliation only the statutory
procedure is operative. It is thus apparent that the
two statutes can be "construed together", "consist-
ently reconciled", "positive repugnancy" avoided,
to reach opposite results, and therefore whether
the statutes can "stand together", be "consistently
reconciled" and "positive repugnancy" avoided
does not resolve the matter.

Whenever a grievance procedure terminating in

---

[9] MCLA 38.71 *et seq.*; MSA 15.1971 *et seq.*

final and binding arbitration is adopted it replaces
the authority of a person or tribunal to make the
ultimate decision. This Court has heretofore "con-
sistently construed the PERA as the dominant law
regulating public employee labor relations"; the
"supremacy of the provisions of the PERA is predi-
cated on the Constitution (Const 1963, art 4, § 48)
and the apparent legislative intent that the PERA
be the governing law for public labor relations".
*Rockwell v Crestwood School District Board of
Education, supra.* Other statutory regulations of
the employment relationship are "diminished *pro
tanto"* by the PERA "to the extent of free adminis-
tration of the latter". *Wayne County Civil Service
Commission v Board of Supervisors, supra.*

A large number of public employee collective
bargaining agreements provide for final and bind-
ing grievance arbitration of disciplinary disputes.[10]
Although the earlier enacted teachers' tenure act
is "very specific" regarding removal procedures
and the language of the PERA ("other terms and
conditions of employment") is "general", teacher
collective bargaining agreements commonly pro-
vide for final and binding grievance arbitration as
the final step,[11] effectively substituting the contract
authority of the grievance arbitrator for the statu-
tory authority of the State Tenure Commission to

[10] *Pontiac Police Officers Association v Pontiac,* 397 Mich 674; 246
NW2d 831 (1976), fns 19 and 23 and accompanying text.

[11] *See Brown v Holton Public Schools,* 397 Mich 71; 243 NW2d 255
(1976); *Detroit Federation of Teachers v Detroit Board of Education,*
396 Mich 220; 240 NW2d 225 (1976); *Kaleva-Norman-Dickson School
District v Kaleva-Norman-Dickson School Teachers' Association,* 393
Mich 583; 227 NW2d 500 (1975). Although the foregoing cases do not
concern the rights of tenured teachers or the issue before the Court,
they show the prevalence of such provisions where the bulk of the
bargaining unit is composed of employees subject to the statutory
procedure. While the contract provisions vary, the relative speed of
the arbitration process has, in a large number of tenured teacher
cases, resulted in pre-emption of the statutory process.

approve *or* disapprove a school district's removal decision.

The power to reinstate a discharged probation officer is indeed "sensitive". So too, having in mind the profound influence of a schoolteacher in molding the value system of a generation of students, is the power to reinstate a teacher discharged for incompetence or misconduct. Police officers wield great power over lives and property; the power to reinstate a disciplined police officer, *Pontiac Police Officers Association v Pontiac, supra,* is "sensitive".[12]

What cannot be consistently reconciled are the concepts that grievance arbitration may dominate, by reason of the PERA, in some areas of the public sector, although there is an earlier enacted statutorily prescribed removal procedure, but does not in this area because there is an earlier enacted statutorily prescribed procedure.

## IV

In consequence of collective bargaining public employers have relinquished some of the control they formerly exercised over their employees. It begs the question to argue that public employers may not delegate their authority. Whenever any public employer enters into a collective bargaining agreement and agrees to a modification of its powers of discharge, it relinquishes, transfers, "delegates" authority.

---

[12] Police officer and fire fighter collective bargaining agreements also commonly contain grievance procedures; the firemen and policemen's civil service system act provides a disciplinary hearing procedure, MCLA 38.513, 38.514; MSA 5.3363, 5.3364.

A disciplinary hearing procedure is prescribed by state law for the county medical examiner and deputy county medical examiner, MCLA 52.201f; MSA 5.953(1f), and for officers and employees in the classified civil service of a township, MCLA 38.462; MSA 5.193(12).

We see no basis for distinguishing between the judiciary and other public employers in resolving the question whether compulsory grievance arbitration is a valid term in a collective bargaining agreement.

Counties, home-rule cities, regents of universities and some commissions also have constitutionally vested powers.[13] There is no discernible distinction between one constitutional function and another in the implementation of the legislative power, specifically enumerated in the Constitution (Const 1963, art 4, § 48), to enact laws for the resolution of disputes concerning public employees.

On the strength of that specific, constitutionally conferred power, the Legislature might have explicitly modified existing statutes concerning the discipline of public employees and provided that all grievances—or, more limited, grievances concerning disciplinary discharge where a collective bargaining agreement has been entered into—shall be resolved by a procedure terminating in final and binding arbitration.

If we were to hold that the doctrine of separation of powers bars the Legislature from authorizing the County of Wayne or the Recorder's Judges from agreeing to a grievance procedure for court employees terminating in final and binding arbitration, it would be in effect to hold that it is beyond the power of the Legislature to enact legislation providing for final and binding arbitration of a grievance arising out of the discipline of a court employee.

The doctrine of separation of powers does not preclude the enactment of laws regulating the employment of public employees who serve the

---

[13] See *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96; 204 NW2d 218 (1973).

courts. The judiciary does not necessarily have the exclusive constitutional power to appoint and remove all public employees who serve the courts. Under the statute, probation officers are appointed and are subject to removal by the Corrections Commission on judicial recommendation.[14]

The Recorder's Court Judges have not shown that the duty to bargain, the agreement reached providing a grievance procedure terminating in final and binding arbitration or the implementation of that agreement has inhibited the discharge of their constitutional function. A fairly administered grievance arbitration procedure for probation officers would not so burden the exercise of the constitutionally conferred powers of the judiciary as to warrant a declaration of unconstitutionality.

Since we conclude that the statutory procedure does not bar implementation of the negotiated grievance procedure and that inhibition of the constitutional function of the judiciary has not been demonstrated, any decision of the arbitrator requiring Osborn's reinstatement would not involve relinquishment by the Recorder's Court Judges of powers which by law or constitution they cannot relinquish (see fn 8).

## V

The public interest in a sound probation system may be better served if probation officers do not have recourse to arbitration. There was, however, no obligation to agree to a grievance procedure terminating in final and binding arbitration.

In *Pontiac Police Officers Association v Pontiac, supra,* p 684, we said that it is "the prerogative of

---

[14] *See* fn 3.

the Legislature to give such consideration as it deems warranted to the claims of public employers that the scope of the collective bargaining obligation impinges unduly on their power to govern".

Kavanagh, C. J., and Ryan, J., concurred with Levin, J.