CLINTON TOWNSHIP v CONTRERA

Docket No. 78-3688. Submitted June 18, 1979, at Detroit.—Decided
September 5, 1979.

William Contrera was employed by the Township of Clinton,
Macomb County, as a Clinton Township Police Officer. He was
subjected to disciplinary action on two separate occasions, the
first involving suspension and the second resulting in his
discharge. A grievance was filed under the collective bargaining
agreement between the township and the Police Officers Associ-
ation of Michigan, the bargaining agent for the Clinton Town-
ship Police Officers, protesting the disciplinary actions. The
grievance was processed to the point where Contrera and the
association requested arbitration, which was provided for in the
collective bargaining agreement, and the township refused to
submit the grievance to arbitration. The township then filed a
complaint against Contrera and the Police Officer's Association
of Michigan for a declaratory judgment that the suspension
and discharge are not subject to the grievance procedures of
the agreement and are not arbitrable, and to enjoin the defen-
dants from seeking arbitration. The Macomb Circuit Court,
Hunter D. Stair, J., entered a judgment in favor of the town-
ship, finding that defendants' remedy was to proceed under the
provisions of the firemen and policemen civil service act, which
the collective bargaining agreement incorporated by reference,
and enjoined the defendants from proceeding further with

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arbitration and Award §§ 14, 15, 54.
  48A Am Jur 2d, Labor and Labor Relations §§ 1853, 1862.
[2] 5 Am Jur 2d, Arbitration and Award § 15.
  48A Am Jur 2d, Labor and Labor Relations § 1854 *et seq.*
[3] 5 Am Jur 2d, Arbitration and Award § 15.
[4] 5 Am Jur 2d, Arbitration and Award § 54.
  48A Am Jur 2d, Labor and Labor Relations § 1861.
[5] 48A Am Jur 2d, Labor and Labor Relations § 1861.
[6] 48A Am Jur 2d, Labor and Labor Relations § 1764.
[7] 73 Am Jur 2d, Statutes § 254.
[8] 48A Am Jur 2d, Labor and Labor Relations § 1800.
[9] 48A Am Jur 2d, Labor and labor Relations § 1773.

arbitration. Defendants appeal, alleging that the grievance was arbitrable and that the adoption of the firemen and policemen civil service act does not preclude enforcement of the contractual arbitration clause. *Held:*

1. The suspension and discharge may arguably be covered by the contract's arbitration clause and the reference in the contract to the firemen and policemen civil service act does not expressly exclude arbitration of disciplinary actions. Whether or not the agreement provides arbitration of disputes as to disciplinary actions as an alternative to the civil service provisions is a preliminary question which is subject to arbitration.

2. The provisions of the collective bargaining agreement, arrived at under the public employment relations act, are not inconsistent with the firemen and policemen civil service act, which provides for a public hearing before the civil service commission if the grievant so desires. The collective bargaining agreement provides the grievant with the option of a hearing or of proceeding to arbitration, and thereby supplements the civil service procedures.

Reversed and remanded.

N. J. KAUFMAN, P.J., concurred. He finds that the language of the collective bargaining agreement authorized by the public employment relations act cannot be read to reach the proposition that a city and the bargaining agent of its employees cannot agree to arbitration of their disputes in regard to disciplinary actions.

OPINION OF THE COURT

1. ARBITRATION AND AWARD — ARBITRATION CLAUSES — JUDICIAL CONSIDERATION.

Arbitration is a matter of contract, and the scope of judicial consideration of an arbitration agreement is sharply limited; arbitration clauses in contracts are to be liberally construed, resolving any doubts about the arbitrability of an issue in favor of arbitration.

2. ARBITRATION AND AWARD — ARBITRABILITY — THREE-STAGE INQUIRY.

A three-stage inquiry is necessary to resolve the question of whether an issue is arbitrable: (1) whether there is an arbitration agreement in a contract between the parties, (2) whether the dispute is arguably covered by the contract and arbitration clause, and (3) whether the dispute is expressly exempt from arbitration by the terms of the contract.

3. ARBITRATION AND AWARD — ARBITRABILITY — JUDICIAL CONSIDERA-
    TION.

    The question for a court in determining the arbitrability of an
    issue is not whether one interpretation of a contract or another
    is correct, but whether the parties have agreed that an arbitra-
    tor shall decide which of the competing interpretations is
    correct.

4. LABOR RELATIONS — MUNICIPAL CORPORATIONS — FIREMEN AND
    POLICEMEN — ARBITRATION — CIVIL SERVICE — STATUTES.

    The question of whether a collective bargaining agreement pro-
    vides for an alternative method of review via arbitration of
    disputes as to disciplinary actions over and beyond the review
    available through civil service provisions is a preliminary
    question which is subject to arbitration where the collective
    bargaining agreement provides that a grievance may be sub-
    mitted to arbitration or to the civil service commission and also
    provides that promotions, lay-offs, suspensions, discharges and
    reinstatements are subject to the civil service provisions of the
    firemen and policemen civil service act (MCL 38.501 *et seq.;*
    MSA 5.3351 *et seq.).*

5. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — MAN-
    DATORY SUBJECTS OF BARGAINING — STATUTES.

    Disciplinary procedures and the proposal of a compulsory griev-
    ance arbitration clause are mandatory subjects of bargaining
    under the public employment relations act (MCL 423.201 *et
    seq.;* MSA 17.455[1] *et seq.).*

6. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — STAT-
    UTES.

    The public employment relations act is the dominant law regulat-
    ing public employee labor relations and was intended by the
    Legislature to govern conflicting law (MCL 423.201 *et seq.;*
    MSA 17.455[1] *et seq.).*

7. STATUTES — CONSTRUCTION OF STATUTES.

    Statutes generally covering the same subject are to be construed
    together, preserving, if possible, the intent and meaning of each
    by judicial interpretation through which neither statute denies
    the effectiveness of the other.

8. LABOR RELATIONS — MUNICIPAL CORPORATIONS — FIREMEN AND
    POLICEMEN — COLLECTIVE BARGAINING AGREEMENT — GRIEV-
    ANCES — STATUTES.

    A section of the firemen and policemen civil service act which
    provides for an opportunity for a public hearing if an aggrieved

employee demands it does not conflict with a grievance proce-
dure contained in a collective bargaining agreement between a
township and its police officers which provides a grievant with
the option of a hearing before the township civil service com-
mission or of submitting the grievance to an arbitrator (MCL
38.514; MSA 5.3364).

CONCURRENCE BY N. J. KAUFMAN, P.J.

9. LABOR RELATIONS — MUNICIPAL CORPORATIONS — PUBLIC EMPLOY-
   MENT RELATIONS ACT — ARBITRATION — STATUTES.

   *A municipality and its employees' bargaining agent may agree to
   arbitration of their disputes in regard to disciplinary actions in
   a collective bargaining agreement authorized by the public
   employment relations act (MCL 423.201 et seq.; MSA 17.455[1]
   et seq.).*

*Towner, Rosin, York & McNamara* (by *Fred A.
York* and *John A. Dolan),* for plaintiff.

*Gregory, Van Lopik, Korney & Moore* (by *W.
Glen Jeakle, II),* for defendants.

Before: N. J. KAUFMAN, P.J., and D. C. RILEY and
J. X. THEILER,* JJ.

D. C. RILEY, J. We are presented with another
conflict between the public employment relations
act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,*
(hereinafter PERA), and the firemen and police-
men civil service act, MCL 38.501 *et seq.;* MSA
5.3351 *et seq.* (hereinafter Act 78).

The PERA prohibits strikes by public employees
while permitting such employees to bargain col-
lectively with their employers. Defendant Police
Officers Association of Michigan is the exclusive
bargaining agent under the PERA for certain law
enforcement officers of the Township of Clinton. At
the time the collective bargaining agreement at

---

* Circuit judge, sitting on the Court of Appeals by assignment.

issue was entered into by the parties, Act 78, which provides for a civil service system governing, *inter alia,* the appointment, promotion, suspension and discharge of firemen and policemen, was in effect in Clinton Township pursuant to a prior vote by the electorate. MCL 38.517a; MSA 5.3368.[1]

Article IV of the collective bargaining agreement provides for a grievance and arbitration procedure. A grievance is defined as:

"[A]ny difference that may arise between the parties relative to:
"1. Any matter involving an alleged violation of any other provisions of this agreement or Act 78 of the Public Acts of the State of Michigan of 1935 as amended."

Section A of Article IV sets forth the steps necessary to process a grievance and provides in part as follows:

"Arbitration or an Act 78 Civil Service Hearing: If a satisfactory settlement is not reached in Step Two or Step Three, or if the Township Board does not meet with the Union within the fifteen (15) day limitation or if the written answer is not submitted within the ten (10) day limit as prescribed in Step Three, the moving party can either proceed to binding arbitration as set forth below or petition the Township Civil Service for a hearing; provided, however, that once the election is made by the moving party, they forfeit the right to withdraw that election and proceed on the other remedy."

---

[1] "The foregoing provisions of this act shall not take effect in any city, village or municipality until approved by a majority of the electors voting thereon at an election at which the question of adoption of this act for that city, village or municipality is properly submitted." MCL 38.517a; MSA 5.3368.

Section C allows for the opportunity of a civil service hearing. It states in applicable part:

"Any unresolved grievances having not been submitted to the American Arbitration Association may be submitted to the Civil Service Commission. Said Commission will be in compliance with Act No. 78 of the Public Acts of the State of Michigan for 1935, as amended.

"The moving party herein will not be allowed to submit unresolved grievances to both the American Arbitration Association and the Civil Service. The submission of the unresolved grievance to either the American Arbitration Association or the Civil Service Commission will preempt the moving party from submitting the unresolved grievance to the body that the grievance has not been submitted to.

"Grievances affecting a number of employees may be treated as a policy grievance and entered at the second step of grievance procedure by the Association."

Finally, Article V of the agreement contains the following crucial provision:

"*PROMOTIONS, LAY-OFFS, SUSPENSIONS, DISCHARGES AND RE-INSTATEMENTS*
"The provisions of Act No. 78 of the Public Acts of the State of Michigan for 1935, as amended, are adopted by reference as if fully stated herein."

On two separate occasions, defendant William Contrera was subject to disciplinary action by the township, the first involving suspension and the second resulting in discharge. A grievance was filed under the collective bargaining agreement, which grievance stated that Contrera had been disciplined without cause in violation of § 14 of Act 78, *infra*. The grievance was processed to the point of request for arbitration, which was refused by the township.

Plaintiff township then filed a complaint for declaratory judgment and incidental relief, requesting that defendants be permanently enjoined from seeking arbitration. The requested relief was granted by the court below.

Defendants appeal, raising two issues, and first allege that the grievance protesting the township's disciplinary action was arbitrable within the terms of the collective bargaining agreement.[2]

Arbitration is a matter of contract, *Kaleva-Norman-Dickson School District No 6 v Kaleva-Norman-Dickson School Teachers' Association,* 393 Mich 583, 587; 227 NW2d 500 (1975), and while the question of arbitration is for the court, *Kaleva, supra, Brown v Holton Public Schools,* 62 Mich App 328, 331; 233 NW2d 274 (1975), *vacated on other grounds,* 397 Mich 71; 243 NW2d 255 (1976), the scope of judicial consideration is sharply limited.

"Public policy in this state favors arbitration in the resolution of disputes. *Kaleva-Norman-Dickson School District No 6 v Kaleva-Norman-Dickson School Teachers' Association,* 393 Mich 583; 227 NW2d 500 (1975). Arbitration clauses contained in contracts are to be liberally construed, *Stadel v Granger Brothers, Inc,* 4 Mich App 250, 258; 144 NW2d 609 (1966), resolving any doubts about the arbitrability of an issue in favor of arbitration. *Chippewa Valley Schools v Hill,* 62 Mich App 116; 233 NW2d 208 (1975), *lv den,* 395 Mich 806 (1975). If the arbitration clause arguably includes the asserted dispute, then arbitration should be ordered upon proper motion. GCR 1963, 769. *Kaleva-Norman-Dickson School District No 6 v Kaleva-Norman-Dickson School Teachers' Association, supra,* at 592, *Ferris State College v Ferris Faculty Association,* 72 Mich App 244;

---

[2] The lower court did not determine whether the agreement actually required arbitration of disciplinary grievances.

249 NW2d 375 (1976)." *Campbell v Community Service Ins Co,* 73 Mich App 416, 419; 251 NW2d 609 (1977).

See also *American Fidelity Fire Ins Co v Barry,* 80 Mich App 670, 673-674; 264 NW2d 92 (1978), *lv den* 402 Mich 915 (1978).

"Absent an *'express provision* excluding [a] particular grievance from arbitration' or the *'most forceful evidence* of a purpose to exclude the claim', (emphasis supplied) the matter should go to arbitration:" *Kaleva, supra,* at 592, quoting *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 584-585; 80 S Ct 1347; 4 L Ed 2d 1409 (1960).

The arbitrability of an issue requires a three-stage inquiry: (1) whether there exists an arbitration agreement in a contract between the parties, (2) whether the dispute is arguably covered by the contract and arbitration clause, and (3) whether the dispute is expressly exempt by the terms of the contract. *American Fidelity Fire Ins Co, supra,* at 674-676.

Applying the foregoing principles to the case at bar, the collective bargaining agreement plainly contains an arbitration clause. Article IV specifically permits the settlement of grievances by means of binding arbitration at the grievant's option. As noted *supra,* Article IV defines a grievance, *inter alia,* to include any alleged violation of Act 78. Section 14 of that act provides that "[n]o member of any fire or police department within the terms of this act shall be removed, discharged, * * * suspended or otherwise punished *except for cause,"* * * * MCL 38.514; MSA 5.3364 (emphasis supplied). Defendants' allegation, that Contrera's suspension and discharge without cause is argu-

ably covered by the arbitration clause, cannot be said to lack merit.

Plaintiff maintains, however, that article V excludes suspensions and discharges from coverage by the arbitration clause due to its specific reference to Act 78 only. We cannot agree. In our opinion, Article V does not *expressly* exclude arbitration of such disciplinary actions since it does not mention arbitration at all. Hence, at best, its meaning is amorphous. In effect, plaintiff invites us to engage in a practice denigrated by the Supreme Court:

"Where a court finds itself weighing the pros and cons of each party's interpretation of substantive provisions of the contract, it is likely that the court has gone astray. The question for the court is not whether one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct." *Kaleva, supra,* at 595.

The contract provisions in the case at bar are not unlike those presented in *Kaleva* where the Court found that the dispute as to whether or not the contract applied was subject to arbitration to determine the meaning and the application of the contract. Accordingly, we hold, on these facts, that whether the collective bargaining agreement provides for an alternative method of review via arbitration of disputes as to disciplinary actions over and beyond the civil service provisions is a preliminary question which is subject to arbitration.

However, we must next determine whether the adoption of Act 78 by a public employer precludes the enforcement of a binding arbitration clause

regarding disciplinary action negotiated pursuant to the PERA.

There can be no quarrel that the Article IV grievance schedule, as it relates to disciplinary procedures, was a legitimate exercise of collective bargaining. Section 15 of the PERA requires that a public employer bargain collectively "with respect to wages, hours, and other terms and conditions of employment * * *", MCL 423.215; MSA 17.455(15). In *Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674, 677, 681; 246 NW2d 831 (1976), the Supreme Court determined that disciplinary procedures and the proposal of a compulsory grievance arbitration clause were mandatory subjects of bargaining under the PERA.

The dilemma arises with § 14 of Act 78, which delineates the method for removal and suspension of a police officer. Among other things, it requires that there be no punishment except for cause, *supra,* written notice of the reasons for discipline, and provides that *"[i]f the person sought to be removed or reduced shall demand it,* the civil service commission shall grant him a public hearing," * * *, MCL 38.514; MSA 5.3364. (Emphasis supplied.) The grievance provisions contained in the present agreement provide, at the option of the grievant, an alternative appeal route through final and binding arbitration. Once the grievant has opted for a hearing before the civil service commission or an arbitrator, however, he is then precluded from taking his appeal to the other tribunal.

The trial court in the instant case found that giving effect to this clause of the agreement would nullify Act 78. The court ostensibly reasoned that the PERA could not be held to "so sanctify contracts as to allow them to violate or to be con-

strued to ignore the provisions of another controlling statute so as to render that statute a nullity". In part, we are constrained to disagree, both as to premise and result. In doing so, however, we must consider a triad of cases which might be read to suggest a dissonant result.

In *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1; 248 NW2d 220 (1976), the Supreme Court, in a 4-3 decision, ruled that defendants were not bound by a collective bargaining agreement grievance procedure which terminated in final and binding arbitration, because the employee was discharged in accordance with the procedures of the probation officer removal statute. MCL 771.10; MSA 28.1140. Although it may be argued that this decision renders all such arbitration clauses suspect, the combined majority's[3] holding was clearly premised upon a concern for any potential constitutional conflict resulting from legislative interference in the functioning of the judiciary:

"Submission of that decision to a grievance procedure with binding arbitration could result in a reinstatement of a probation officer in which the court could no longer place trust or confidence. We cannot accept that the Legislature in adopting § 15 of the PERA in 1965 meant to encumber the judicial process in such a manner." *Council No 23, supra,* at 7. See also concurring opinion of WILLIAMS, J., *supra,* at 9, 15.[4]

---

[3] Three members of the majority were also of the opinion that, of the two statutes at issue, the PERA, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* and the probation officer removal statute, MCL 771.10; MSA 28.1140, the latter was more specific and therefore controlling. *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1, 6; 248 NW2d 220 (1976). The fourth member noted that there was no "positive repugnancy" between the two legislative enactments.

[4] "Supporting this finding is the consideration that legislative intention to delegate to a private person the power to remove or reinstate so sensitive a judicial official as a probation officer, because of consti-

No such constitutional conflict arises in the present case.

*Sloan v Warren Civil Service Comm,* 26 Mich App 555; 182 NW2d 815 (1970), involved a clash between a labor agreement negotiated under the PERA and the jurisdiction of the local civil service commission. There, plaintiff was city-employed in the water department, but was replaced by another worker with higher seniority from the sanitation department when that department was eliminated by the city. The bumping was accomplished pursuant to a provision in the collective bargaining agreement permitting laid-off employees to displace others with lesser seniority and lower, or equal, job classifications. The city civil service commission found that the bumping employee's prior job classification involved a *lesser* degree of responsibility, authority or technical ability than plaintiff's job classification, and ordered plaintiff reinstated. This Court affirmed, holding that the commission, established by city ordinance in 1958, was empowered by that ordinance to resolve the dispute in issue. In rejecting defendant's argument that under the PERA, enacted in 1965, collective bargaining agreements must prevail over civil service provisions, the Court emphasized that Const 1963, art 11, § 6, precluded modification or discontinuance of the civil service plan without a vote of the people. That section provides:

"By ordinance or resolution of its governing body which shall not take effect until approved by a majority of the electors voting thereon, unless otherwise provided by charter, each county, township, city, village,

tutional implications, could not be presumed absent specific language to that effect." *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1, 9; 248 NW2d 220 (1976).

school district and other governmental unit or author-
ity may establish, modify or discontinue a merit system
for its employees."

Thus, the Legislature could not displace from the
commission those responsibilities which the Michi-
gan Constitution sought to preserve. *Sloan, supra,*
at 563-564.

Finally, in *Local 1383 of the International Ass'n
of Firefighters v City of Warren,* 89 Mich App 135;
279 NW2d 556 (1979), the Court of Appeals nulli-
fied a provision of the collective bargaining agree-
ment signed by plaintiff and the city which pur-
ported to govern promotion within the fire depart-
ment, because it conflicted with Act 78,[5] under
which the civil service commission was empowered
to ascertain the qualifications and fitness for pro-
motion of fire department employees. Reasoning in
nearly identical fashion to the *Sloan* Court, the
panel held that the Michigan Constitution pre-
cluded a collective bargaining agreement, properly
arrived at under the PERA, from extinguishing
the commission's power conferred to it by Act 78:

"Were the instant conflicts solely between the statu-
tory provisions of PERA and Act 78, we would probably
find *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44;
214 NW2d 803 (1974), controlling so as to require a
finding that the provisions of the collective bargaining
agreement prevailed over conflicting Civil Service Com-
mission promotional guidelines. However, in the face of

[5] "On and after the date this act takes effect, appointments to and
promotions in all paid fire and/or police departments of cities, vil-
lages or municipalities of any population whatsoever shall be made
only according to qualifications and fitness to be ascertained by
examinations, which shall be competitive, and no person shall be
appointed, reinstated, promoted or discharged as a paid member of
said departments regardless of rank or position, in any fire or police
department of any city, village or municipality in the state of Michi-
gan, in any manner or by any means other than those prescribed in
this act." MCL 38.507; MSA 5.3357.

conflict with Const 1963, art 11, § 6, we hold that the provisions of the collective bargaining agreement cannot modify or alter an existing civil service system." *Local 1383, supra,* at 143.

What emerges, perhaps, from a consideration of these decisions is that where a provision of a collective bargaining agreement directly interferes with a co-equal branch of the government and thereby impinges upon the separation of powers doctrine *(Council 23),* or where it strips the local civil service commission of its constitutionally protected authority *(Sloan* and *Local 1381),* that provision is unenforceable.[6]

We endeavor to note, however, that the authority under which the PERA was enacted itself germinates from constitutional soil. Const 1963, art 4, § 48 vests authority in the Legislature to:

"enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."

The Supreme Court has, on previous occasion, held that the PERA, designed and construed to be the dominant law regulating public employee labor relations, *Rockwell v Crestwood School District Board of Education,* 393 Mich 616, 629-630; 227 NW2d 736 (1975), was intended by the Legislature to govern conflicting law "and is superimposed even on those institutions which derive their powers from the Constitution itself",[7] *Central Michi-*

6 See, *e.g., Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), *Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96; 204 NW2d 218 (1973).

7 An argument that certain public employers should be insulated from the collective bargaining obligation of the PERA due to constitutional and statutory grants of authority was raised and rejected in *Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674; 246 NW2d 831 (1976). Despite three separate opinions, all participating justices

*gan University Faculty Ass'n v Central Michigan University,* 404 Mich 268, 279; 273 NW2d 21 (1978).

Nevertheless, we find it unnecessary to ground our decision on this basis, for we turn to rudimentary precepts of statutory construction in order to arrive at what we perceive is the correct result in the present case. One rule is to construe together statutes generally covering the same subject and thereby, if at all possible, preserve the intent and meaning of each by judicial interpretation through which neither denies the effectiveness of the other. *Borden, Inc v Dept of Treasury,* 391 Mich 495, 523; 218 NW2d 667 (1974), *Paquin v Northern Michigan University,* 79 Mich App 605, 607; 262 NW2d 672 (1977), and cases cited therein.

In the case at bar, we do not find the PERA, under which authority the present contract was enacted, and Act 78, antithetical. The application of each in the present case involves no positive repugnancy, *Council 23, supra,* at 8-11, nor are the procedures set forth in Article IV of the collective bargaining agreement in any way inconsistent with Act 78. Section 14 provides only for an *opportunity* for a public hearing if the grievant shall demand it. It is permissive rather than mandatory. The grievance procedure contained in the collective bargaining agreement provides the grievant with the option of a hearing before the commission

---

agreed that the public employer's duty to bargain collectively under the PERA superseded conflicting provisions of a home-rule city charter. Const 1963, art 7, §§ 23, 34, home rule cities act, MCL 117.1 *et seq.;* MSA 5.2071 *et seq.*

See also *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), and *Wayne County Civil Service Comm v Board of Supervisors,* 384 Mich 363, 374; 184 NW2d 201 (1971), where the Supreme Court determined that the original authority and duty of the Wayne County Civil Service Commission "was diminished *pro tanto"* by the PERA "to the extent of free administration of the latter".

or before an arbitrator. It therefore supplements, rather than replaces, the procedures outlined in § 14. The grievant, if he wishes, may still take his appeal to the commission. Thus, *contra* to *Sloan* and *Local 1383, supra,* no authority is removed from the township civil service commission.

The decision of the lower court to enjoin enforcement of the arbitration grievance procedure is reversed and the case is remanded for proceedings not inconsistent with this opinion.

Costs to defendants.

J. X. THEILER, J., concurred.

N. J. KAUFMAN, P.J. *(concurring).* I concur wholeheartedly in the well-written opinion of Judge RILEY. However, I find it necessary to write separately because of the fact that I was one of the members of the panel in *Local 1383 of the International Ass'n of Firefighters v City of Warren,* 89 Mich App 135; 279 NW2d 556 (1979).

Simply put, the *Warren* case does not stand for the proposition that all matters within the province of Act 78 are precluded from collective bargaining. If anything, quite the contrary is true. The factual situation in *Warren* regarding promotions is not analogous to the facts in this case. In this case we have a collective bargaining agreement authorized by PERA which allows arbitration in matters involving disciplinary matters, which includes discharges and suspensions, and the language therein, as properly noted by Judge RILEY, cannot be read at all to reach the proposition that a city and its employees' bargaining agent cannot agree to arbitration of their disputes in regard to disciplinary actions.

Therefore, I concur.