LOCAL 1383, INTERNATIONAL ASSOCIATION OF FIRE
FIGHTERS, AFL-CIO v CITY OF WARREN

Docket No. 63227. Argued April 15, 1980 (Calendar No. 5).—Decided
November 2, 1981.

Local 1383, International Association of Fire Fighters, AFL-CIO,
brought an action for declaratory judgment against the City of
Warren and its Police and Fire Civil Service Commission,
claiming that the parties' collective-bargaining agreement con-
cerning seniority and promotions of employees of the city's fire
department, which was negotiated under the public employ-
ment relations act, should prevail over conflicting provisions of
the statute concerning civil service for police and fire depart-
ments and of the Warren City Charter. The Macomb Circuit
Court, Walter P. Cynar, J., granted summary judgment for the
defendants. The Court of Appeals, M. F. Cavanagh, P.J., and
D. E. Holbrook, Jr., and N. J. Kaufman, JJ., affirmed, holding
that the Constitution of 1963 requires approval of the voters of
the municipality to discontinue or modify a statutory merit
system for municipal employees (Docket No. 77-5147). Plaintiff
appeals. *Held:*

The contractual provision governing promotions in the War-
ren Fire Department, which was made under the public em-
ployment relations act, is valid and enforceable. It sets forth
the promotional system for employees in the Local 1383 bar-
gaining unit, notwithstanding the conflicting provisions of the
statute concerning civil service for police and fire departments
and of the Warren City Charter.

1. The Constitution of 1963 specifically authorized the Legis-
lature to enact laws governing public employment. Pursuant to
that authority the public employment relations act was enacted

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 6, 7] 48A Am Jur 2d, Labor and Labor Relations § 1770.
  Bargainable or negotiable issues in state public employment labor
  relations. 84 ALR3d 242.
[4, 8, 11] 48A Am Jur 2d, Labor and Labor Relations § 1764 *et seq.*
[5-7, 9, 12] 48A Am Jur 2d, Labor and Labor Relations § 1771.
[8] 16 Am Jur 2d, Constitutional Law § 81.
[10] 48A Am Jur 2d, Labor and Labor Relations § 1764.

to provide public employees the right to form and join labor organizations and to negotiate in good faith with public employers regarding "wages, hours, and other terms and conditions of employment". In federal labor law, seniority, promotions, and promotional criteria are among the "other terms and conditions of employment" under the National Labor Relations Act. The phrase is a technical one in labor relations law which has a specific meaning. In adopting the same language, the Legislature must have intended to include in the public employment relations act a meaning similar to that given by the federal interpretations. Accordingly, seniority, promotions, and promotional criteria are included within the statutory phrase; thus, these matters are mandatory subjects of collective bargaining.

2. When the Constitutional Convention of 1961 authorized the Legislature to enact laws "providing for the resolution of disputes concerning public employees", it must have perceived that the Legislature would thereby have the power to enact laws governing the resolution of disputes regarding as vital a concern as promotion and seniority. The right to bargain and the duty to bargain in good faith specifically permit representatives of public employees to negotiate for changes in the conditions of employment, and public employers may resist the proposed changes during negotiations. The parties are free, for instance, to adopt substantive provisions of the statute concerning civil service for police and fire departments without change. It is the collective-negotiation system that the Legislature has determined to be the appropriate method for public employers and their employees to develop and specify terms and conditions of employment. The statutory procedure of the police and fire civil service statute does not address a collective-negotiation method for determining employment conditions.

3. The Supreme Court has consistently held that the public employment relations act prevails over conflicting legislation, charters, and ordinances in the face of challenges by cities, counties, public universities, and school districts. The same conclusion is mandated in this case by the reasoning of the Court's prior decisions. To decide this case in conformity with prior decisions, the public employment relations act must be viewed as the dominant law regulating labor relations in public employment. If the public employer and the union agree to a change in the system of promotions, the collective-bargaining agreement controls. The mandatory duty to bargain and the need for uniform treatment of all questions of labor relations in public employment, when contrasted with the permissive nature of the statute concerning civil service for police and fire

departments, lead to the conclusion that the Legislature intended the duty to bargain under the public employment relations act to prevail over the police and fire civil service act.

4. The system of promotions in the police and fire civil service act will continue to have effect in municipalities that adopt the civil service system of the act, unless a different system or plan is incorporated in a collective-bargaining agreement. The original authority and duties of the defendant Police and Fire Civil Service Commission, as provided in the statute, were diminished *pro tanto* by the public employment relations act to the extent that the free administration of collective bargaining requires it.

5. The defendants assert that the Constitution of 1963 provides that a collective-bargaining agreement cannot modify an existing civil service system unless the modification is approved by a majority of the electors. The Court has decided in other cases that action by a public employer which is otherwise within its constitutional authority is subject to the obligation to bargain collectively under the public employment relations act because of the fundamental purpose of the constitutional provision which provides for the Legislature to enact laws for the resolution of disputes concerning public employees. The power of the Legislature is limited only where the disputes are in the state classified civil service. Therefore, it covers disputes arising in municipalities, which are merely permitted by the constitution to establish civil service systems. There is no suggestion in the constitutional provision for the adoption of civil service merit systems in local political subdivisions that a local civil service system must prevail when it conflicts with a collective-bargaining contract or bargaining obligations imposed by a general state law, nor does it hint that it was intended to limit the provision for the Legislature to enact laws for the resolution of disputes concerning public employees, nor indicate that it was intended to control collective bargaining conducted pursuant to such a law. The public policy of the state as to labor relations in public employment is for legislative determination. To require approval of a collective-bargaining agreement by the voters would hinder and frustrate the free administration of the public employment relations act.

6. The constitution authorizes the Legislature to enact statewide laws regulating disputes concerning public employees. The primary purposes of the constitutional provision permitting local civil service systems were to allow them to be adopted without the express approval of the Legislature, to prohibit local political officials from unilaterally changing the merit

system, and to protect local public employees from political purges. Where collective bargaining reaches the issues covered by local civil service systems, the restraint on the power of local public officers is inherent within the collective-bargaining process. If the Legislature were not free to provide for free and full collective bargaining in local civil service systems, the public employment relations act, a uniform state-wide law, would be converted into a local-option law. Each local government would have a wide choice in the subjects of collective bargaining, and local public employers could opt out of the statutory scheme for the resolution of disputes involving mandatory subjects of bargaining, such as promotions and seniority. That would severely erode the sound policies which lead to the conclusion that the public employment relations act is the dominant law governing disputes concerning public employees.

Reversed and remanded to the circuit court for entry of a summary judgment for the plaintiff.

Justice Ryan, joined by Chief Justice Coleman, dissented because the decision denigrates the paramount authority conferred by the Constitution of 1963 on the citizens of the City of Warren to determine the kind of public employment system by which they will be served. If the conflict were solely between the statutory provisions in this case, the provisions of the collective-bargaining agreement on seniority and promotions might prevail over conflicting local civil service guidelines. However, the collective-bargaining agreement cannot modify or alter an existing local civil service system under the Constitution of 1963.

89 Mich App 135; 279 NW2d 556 (1979) reversed.

OPINION OF THE COURT

1. LABOR RELATIONS — PUBLIC EMPLOYMENT — COLLECTIVE BARGAINING — CONDITIONS OF EMPLOYMENT.

Seniority, promotions, and promotional criteria for public employees are "other terms and conditions of employment" under the public employment relations act and, thus, are mandatory subjects of collective bargaining (MCL 423.215; MSA 17.455[15]).

2. LABOR RELATIONS — PUBLIC EMPLOYMENT — RESOLUTION OF DISPUTES — CONSTITUTIONAL LAW.

The constitutional power of the Legislature to enact laws providing for the resolution of disputes concerning public employees must fairly be construed to include disputes regarding promotion and seniority (Const 1963, art 4, § 48).

3. LABOR RELATIONS — PUBLIC EMPLOYMENT — COLLECTIVE BARGAIN-
ING — CONDITIONS OF EMPLOYMENT.

The Legislature has determined that collective negotiation is the
appropriate method for public employers and employees to
develop and specify terms and conditions of employment; once
a specific subject has been classified as a mandatory subject of
bargaining, the parties are required to bargain concerning the
subject, and neither party may take unilateral action on the
subject absent an impasse in negotiations (Const 1963, art 4,
§ 48; MCL 423.215; MSA 17.455[15]).

4. LABOR RELATIONS — PUBLIC EMPLOYMENT — CONSTITUTIONAL LAW
— STATUTES.

The public employment relations act prevails over conflicting
legislation, municipal charters, and ordinances regarding public
employers' powers; it must be regarded as the dominant law
regulating labor relations in public employment (Const 1963,
art 4, § 48; MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

5. LABOR RELATIONS — PUBLIC EMPLOYMENT — LOCAL CIVIL SERVICE
— COLLECTIVE BARGAINING — CONDITIONS OF EMPLOYMENT.

A collective-bargaining agreement under the public employment
relations act concerning seniority and promotions of employees
of a city's fire department is valid and enforceable, and prevails
over the statute concerning civil service for police and fire
departments; the statutory authority and duties of a city's
police and fire civil service commission are diminished *pro
tanto* to the extent required for the free administration of
mandatory collective bargaining under the public employment
relations act (Const 1963, art 4, § 48; MCL 38.501 *et seq.,*
423.201 *et seq.;* MSA 5.3351 *et seq.,* 17.455[1] *et seq.).*

6. LABOR RELATIONS — PUBLIC EMPLOYMENT — COLLECTIVE BARGAIN-
ING — CONDITIONS OF EMPLOYMENT.

The public employment relations act requires a public employer
to bargain in good faith about seniority and promotions, but
does not require the public employer to agree to a proposal
made by its employees (MCL 423.215; MSA 17.455[15]).

7. LABOR RELATIONS — PUBLIC EMPLOYMENT — LOCAL CIVIL SERVICE
— SENIORITY — PROMOTIONS.

The system of promotions in the statute concerning civil service
for police and fire departments continues to have effect in
municipalities that adopt the civil service system of the statute
unless a different system or plan is incorporated into a collec-
tive-bargaining agreement under the public employment rela-

tions act (MCL 38.501 *et seq.*, 423.201 *et seq.;* MSA 5.3351 *et seq.*, 17.455[1] *et seq.*).

8. LABOR RELATIONS — PUBLIC EMPLOYMENT — CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — LOCAL CIVIL SERVICE.

The Constitution of 1963 authorizes the Legislature to enact state-wide laws regulating disputes concerning local public employees; therefore, the collective-bargaining system mandated by the public employment relations act, which was enacted under the constitutional provision, when read together with the constitutional provision requiring the voters to approve a local civil service system should not unnecessarily hinder the free administration of mandatory collective bargaining under the public employment relations act (Const 1963, art 4, § 48; art 11, § 6; MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.*).

9. LABOR RELATIONS — PUBLIC EMPLOYMENT — CONSTITUTIONAL LAW — LOCAL CIVIL SERVICE.

To require an affirmative vote of the electorate to permit a collective-bargaining agreement entered under the public employment relations act to modify a local civil service system would unduly hinder and frustrate the free administration of the public employment relations act, which the Legislature has determined to be the public policy of the state as to labor relations in public employment (Const 1963, art 4, § 48; art 11, § 6; MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.*).

10. LABOR RELATIONS — CONSTITUTIONAL LAW — LOCAL CIVIL SERVICE.

The primary purposes of the constitutional provision permitting local civil service systems were to allow them to be adopted without the express approval of the Legislature, to prohibit local political officials from unilaterally changing the merit system, and to protect local public employees from political purges; its purpose was not to diminish the Legislature's power to enact laws for the resolution of disputes concerning public employees (Const 1963, art 4, § 48; art 11, § 6).

11. LABOR RELATIONS — PUBLIC EMPLOYMENT — CONSTITUTIONAL LAW — LOCAL CIVIL SERVICE.

The home-rule power of local public employers is subject to collective bargaining under the public employment relations act, and the constitutional provision for local civil service systems was not intended to preclude the application of the public employment relations act to provide for free and full collective bargaining on the subjects of promotions and senior-

ity of employees in a city's fire department (Const 1963, art 4, § 48; art 11, § 6; MCL 423.201 et seq.; MSA 17.455[1] et seq.).

Dissenting Opinion by Ryan, J.

12. Labor Relations — Public Employment — Local Civil Service — Collective Bargaining — Constitutional Law.

*A collective-bargaining agreement under the public employment relations act concerning seniority and promotions of employees of a city's fire department cannot alter or modify conflicting local civil service system provisions for police and fire departments in the statute and city charter because the Constitution of 1963 confers the paramount authority on the citizens of the city to determine the kind of public employment system by which they will be served (Const 1963, art 11, § 6; MCL 38.501 et seq., 423.201 et seq.; MSA 5.3351 et seq., 17.455[1] et seq.).*

*Gregory, Van Lopik, Korney & Moore* (by *J. Douglas Korney)* for plaintiff.

*W. Thomas Marrocco, Jr.,* City Attorney, and *John J. Murray,* Chief Assistant City Attorney, for defendants.

Amici Curiae:

*Zwerdling & Maurer* (by *George B. Washington)* for Council No. 25, AFSCME.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Theodore Sachs, Ronald R. Helveston,* and *John R. Runyan, Jr.),* for Michigan State Fire Fighters Union.

Blair Moody, Jr., J. Plaintiff, Local 1383 of the International Association of Fire Fighters (Local 1383), appeals from a Court of Appeals decision affirming a summary judgment in favor of defendants, the City of Warren and the Police and Fire Civil Service Commission for the City of Warren (Civil Service Commission). 89 Mich App 135; 279 NW2d 556 (1979).

The question presented is whether a collective-bargaining agreement's provision concerning promotions, which is entered into under the public employment relations act (PERA), is valid and enforceable when it conflicts with provisions of a city charter and the fire and police civil service act, 1935 PA 78 (Act 78). MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.;* MCL 38.501 *et seq.;* MSA 5.3351 *et seq.* The circuit court and Court of Appeals held the promotional system in the collective-bargaining agreement between Local 1383 and the City of Warren void. We granted leave to appeal. 407 Mich 897 (1979).

We hold that the contract provision governing promotions entered into under PERA is valid and enforceable. We also hold that this provision sets forth the promotional system for employees in the Local 1383 bargaining unit, notwithstanding conflicting provisions in Act 78 or the Warren Charter. Accordingly, we reverse the Court of Appeals decision.

## I

There is no material dispute as to the facts in this case. The provisions of Act 78 set forth a civil service merit appointment and promotional system for fire fighters and police officers which may be adopted by local municipalities. The authority and duties of a municipal civil service commission governing these occupations are also explicitly detailed in the act. The terms of Act 78 were incorporated by reference into the Warren Charter by an amendment approved by the electorate in 1961. Warren Charter § 7.18.

Local 1383 is the recognized and exclusive collective-bargaining representative of all Warren Fire

Department employees, except the Fire Commissioner and civilian employees. Local 1383 and the City of Warren executed a collective-bargaining agreement concerning wages, hours, and conditions of employment. The agreement provided in pertinent part:

"*Article 12—Seniority.*

"(a) Seniority and its application shall be governed by the provisions of Act 78, Public Acts of 1935, except as provided in Section (b) below.

"(b) It is agreed that the promotional system for employees in the Local 1383 bargaining unit shall provide for promotions based upon seniority and reasonable qualifications as may be determined by the Fire Department after consultation with the Union."

Attached to the collective-bargaining agreement was a letter of understanding between Local 1383 and the City of Warren. The letter provided that if the Civil Service Commission refused to implement Article 12(b) of the agreement, the City of Warren would be held in violation of that provision only if the city failed to implement the new procedure after final judicial determination of its validity.

The Fire Commissioner informed the Civil Service Commission that, pursuant to Article 12(b), the Fire Department was in the process of qualifying persons for promotions and would submit a list of names from which the department would make promotions. The Civil Service Commission took the position that it was the body which determined qualifications, through competitive examinations, for promotion of Fire Department employees under Act 78. It also said that it was unaware of any election in which the electors of the City of Warren had voted to rescind or repeal the adoption of the civil service system of the act.

Local 1383 brought this action seeking a declaratory judgment that the terms of the collective-bargaining agreement prevail over any contrary provisions of Act 78, and any rules or regulations adopted by the Civil Service Commission pursuant to the act. Both parties filed motions for summary judgment. The circuit court granted summary judgment in favor of defendants. The Court of Appeals affirmed.

II

The critical question posed by this case is whether a normal and vital subject of bargaining can be removed from the public bargaining table by local charter provisions.

In 1963, the people adopted a new constitution which specifically authorized the Legislature to enact laws governing public employment. Article 4, § 48 of the constitution provides:

"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."

Acting pursuant to this explicit constitutional authorization, PERA was enacted by the Legislature in 1965. This basic law provided public employees the right to form and join labor organizations and to negotiate in good faith with public employers regarding "wages, hours, and other terms and conditions of employment".

Accordingly, the duty of the City of Warren to bargain collectively with Local 1383 is set forth in § 15 of PERA, which reads:

"A public employer shall bargain collectively with the representatives of its employees as defined in sec-

tion 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession." MCL 423.215; MSA 17.455(15).

This Court has repeatedly recognized that § 15 of PERA was patterned after § 8(d) of the National Labor Relations Act (NLRA). 29 USC 158(d). The language of these PERA and NLRA sections is virtually identical. Consequently, when defining the scope of bargaining, Michigan cases have followed Federal decisions and have adopted a broad and expansive interpretation of "wages, hours, and other terms and conditions of employment". See, e.g., *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268; 273 NW2d 21 (1978); *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974); *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487; 233 NW2d 49 (1975), *lv den* 395 Mich 756 (1975).

In Federal labor law, seniority, promotion, and promotional criteria are among other terms and conditions of employment under NLRA § 8(d).[1] In a

_____

[1] See *Ford Motor Co v Huffman,* 345 US 330; 73 S Ct 681; 97 L Ed 1048 (1953); *National Labor Relations Board v Century Cement Manufacturing Co, Inc,* 208 F2d 84 (CA 2, 1953); *Rapid Roller Co v National Labor Relations Board,* 126 F2d 452 (CA 7, 1942). See also *Inland Steel Co v National Labor Relations Board,* 170 F2d 247, 251 (CA 7, 1948); *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487; 233 NW2d 49 (1975).

technical sense, the meaning of the phrase "other terms and conditions of employment" has developed to include seniority, promotion, and promotional criteria. In fact, seniority is so clearly a mandatory subject of bargaining that there is little litigation concerning this concept. Morris, ed, The Developing Labor Law (Washington, DC: Bureau of National Affairs, Inc, 1971), p 406.

A rule of statutory construction adopted by the Legislature states:

"All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a; MSA 2.212(1).

"[O]ther terms and conditions of employment" is a technical phrase in labor relations law. That phrase has a specific meaning. We are convinced that the Legislature, by using the phrase in PERA, intended to include a meaning similar to that afforded by Federal interpretations.

Accordingly, our Court has recognized that seniority, promotion, and promotional criteria are included within the phrase "other terms and conditions of employment". We have concluded that these matters are mandatory subjects of collective bargaining. *CMU, supra; DPOA, supra,* 391 Mich 44.[2]

---

[2] *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487; 233 NW2d 49 (1975), held that standards and criteria for promotion are a mandatory subject of bargaining. The DPOA bargaining unit did not represent the supervisory officers whose qualifications would be the subject of collective bargaining. Promotions are such an important topic of employment relations that even promotions out of a bargaining unit are mandatory subjects. In the instant case the "supervisory" employees of the Fire Department, other than the Fire Commissioner,

"The subjects included within the phrase 'wages, hours, and other terms and conditions of employment' are referred to as 'mandatory subjects' of bargaining. Once a specific subject has been classified as a mandatory subject of bargaining, the parties are required to bargain concerning the subject, and neither party may take unilateral action on the subject absent an impasse in negotiations." (Citations omitted.) *CMU,* 277.

It may also be fairly deduced that when the Constitutional Convention authorized the Legislature to enact laws "providing for the resolution of disputes concerning public employees", Const 1963, art 4, § 48, it must have perceived that the Legislature would thereby have the power to enact laws governing the resolution of disputes regarding so vital a concern as promotion and seniority.

The right to bargain and the duty to bargain in good faith specifically permit employees' representatives to engage in negotiations for the purpose of changing conditions of employment. Public employers may resist the proposed changes during negotiations. The parties are free, for instance, to adopt substantive provisions of Act 78 without change. It is the collective-negotiation system that the Legislature has determined to be the appropriate method for public employers and their employees to develop and specify terms and conditions of employment. Collective negotiation is the proper procedure for changing employment conditions once the exclusive representative of the employees has been selected. MCL 423.215; MSA 17.455(15). The Act 78 procedure neither addresses nor focuses upon a collective-negotiation method for determining employment conditions.[3]

are within the same bargaining unit. See MCL 423.213; MSA 17.455(13).

[3] Compare MCL 123.841; MSA 5.3331 which regulates the maximum hours of fire department employees. MCL 123.842(e); MSA

Following the mandate of PERA and the case law interpreting § 15, the City of Warren and Local 1383 bargained about the mandatory subjects and executed a collective-bargaining agreement incorporating a promotion system.

## III

This Court has consistently held that PERA prevails over conflicting legislation, charters, and ordinances in the face of contentions by cities, counties, public universities and school districts that other laws or the constitution carve out exceptions to PERA.[4] That same conclusion is man-

---

5.3332(e) exempts from the maximum-hours requirements of the previous section, "any municipality which, by agreement with the collective bargaining agent representing affected employees, does not require its employees engaged in fire fighting or subject to the hazards thereof, to be on duty more than 40 hours in any consecutive 7-day period".

[4] In some instances the judiciary has been excepted from the duty to bargain under PERA. *In the Matter of the Petition for a Representation Election Among Supreme Court Staff Employees,* 406 Mich 647; 281 NW2d 299 (1979); *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1; 248 NW2d 220 (1976). The result in *Council No 23* consisted of two opinions. The opinions agreed that the probation officer removal statute, MCL 771.10; MSA 28.1140, which insures employees a full hearing before a court may recommend removal of the officer, prevails over a collective-bargaining provision for binding arbitration of employees' grievances. The opinion of Justice LINDEMER concluded that the Legislature did not mean to encumber the judicial process in adopting § 15 of PERA. His opinion expressed the concern that binding arbitration could result in the reinstatement of a probation officer, whose duties are central to the administration of criminal justice, after the court could no longer trust the officer or have confidence in him or her. *Council No 23,* 7. Justice WILLIAMS' opinion expressed concerns regarding the legislative intent under PERA to delegate to an arbitrator the power to reinstate "so sensitive a judicial official as a probation officer". *Council No 23,* 9.

*Cf. Livingston County v Livingston Circuit Judge,* 393 Mich 265; 225 NW2d 352 (1975) (circuit court is public employer under PERA); *Judges of the 74th Judicial Dist v Bay County,* 385 Mich 710; 190 NW2d 219 (1971) (district court is public employer; unfair labor practice charge under PERA may be asserted against a judge).

dated in the instant case by the reasoning employed in our prior decisions.

An apparent conflict between PERA and the county civil service act, MCL 38.401 *et seq.;* MSA 5.1191(1) *et seq.,* was before this Court in *Wayne County Civil Service Comm v Board of Supervisors,* 384 Mich 363; 184 NW2d 201 (1971). Discussing the purpose of the county civil service act, 1941 PA 370, this Court concluded that the concept of public employees' collective bargaining could not have been in the minds of the legislators in 1941.

Under the county civil service act, a county civil service commission has an extensive, if not exclusive, role in the control of employment relations within the county. This Court concluded that PERA and the county civil service act could not be harmonized, and that the civil service commission "has no lawful part in the administration, directly or indirectly, of the act of 1965 [PERA]". *Wayne County Civil Service Comm,* 376.

This Court held:

"[T]he act of 1965 [PERA] operates, *'to the extent of the repugnancy,'* as a partial repeal of the act of 1941 [county civil service act]; but no more than that. In short shrift this means that the purposed thrust of the act of 1965, that of prohibiting strikes by public employees and providing collective bargaining, negotiation and enforced mediation of labor disputes arising out of public employment coming within the scope of the act, must be implemented and administered exclusively as provided therein. Hence, the original authority and duty of the plaintiff civil service commission was diminished *pro tanto,* by the act of 1965, to the extent of free administration of the latter according to its tenor." *Wayne County Civil Service Comm,* 374.

The defendant County Board of Supervisors con-

tended that PERA "to the extent that it places rates of pay, hours of work and other conditions of employment * * * into the area of collective bargaining supersedes *pro tanto* those provisions or parts of [the county civil service act] dealing with the same subject matters". This Court agreed with the supervisors' contentions. *Wayne County Civil Service Comm*, 371.

The state universities have argued that constitutional and statutory grants of authority alter the scope of collective bargaining and the duty to bargain under PERA. In *Board of Control of Eastern Michigan University v Labor Mediation Board*, 384 Mich 561; 184 NW2d 921 (1971), it was determined that the university is a public employer and subject to PERA. Our Court again emphasized the public policy of the predominance of PERA by the succinct statement:

"The public policy of this state as to labor relations in public employment is for legislative determination. The sole exception to the exercise of legislative power is the state classified civil service, the scheme for which is spelled out in detail in Article 11 of the Constitution of 1963." *EMU*, 566.

In another case where the university's existence was specifically provided for by the constitution, we determined that PERA was superimposed upon and limited the constitutional authority of the University of Michigan Board of Regents. Responding to the university's contention that student interns and residents were not employees within PERA we stated:

"If the Legislature had intended to exclude students/employees from the operation of PERA, they could have written such an exception into the law." *Regents of the*

*University of Michigan v Employment Relations Comm,*
389 Mich 96, 110; 204 NW2d 218 (1973).

Our holding in *CMU* specifically included the subject of promotional criteria within the scope of mandatory bargaining under PERA. It was urged that since Central Michigan University derives its existence from constitutional authority, PERA did not have full application to university employees. After explaining that PERA was intended to cover all public employees except for those in the state classified civil service, we reasoned that

"PERA was intended by the Legislature to supersede conflicting laws and is superimposed even on those institutions which derive their powers from the Constitution itself.

\* \* \*

"[T]he unique status accorded state universities by constitutional and statutory authority does not alter the scope of their collective bargaining obligation under the PERA. If university professors are truly unique and thus different from other public employees, the Legislature must carve out an exception to the PERA. This Court cannot." *CMU,* 279, 281.

Conflicting provisions of PERA and the teachers' tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.,* were before this Court in *Rockwell v Crestwood School Dist Board of Education,* 393 Mich 616; 227 NW2d 736 (1975). Section 6 of PERA provides that public employees disciplined for striking are entitled, upon request, to a determination whether their actions violated the anti-strike provisions of PERA. The request is to be made after the discipline has been imposed. MCL 423.206; MSA 17.455(6). The teachers' tenure act requires a hearing prior to discharge or demotion

of tenured employees, MCL 38.101; MSA 15.2001.
The *Crestwood* Court reviewed our decisions which
"consistently construed the PERA as the dominant
law regulating public employee labor relations".
*Crestwood,* 629. Our Court reasoned:

"The 1937 Legislature in enacting the teachers' ten-
ure act could not have anticipated collective bargaining
or meant to provide for the resolution of labor relations
disputes in public employment." *Crestwood,* 630.

The apparent intent of the Legislature that
PERA be the governing law for public employment
relations and disputes; the consistent holdings of
this Court that PERA is the dominant law regulat-
ing public employment relations; and the need for
uniform treatment of all public employment rela-
tions questions resulted in this Court concluding
that PERA prevailed over the teachers' tenure act.

Of particular significance are the holdings of
this Court involving charter provisions. In two
pertinent cases, it was determined that collective-
bargaining obligations under PERA, in effect, pre-
vailed over charter enactments otherwise lawful
under article 7, § 22 of the 1963 Constitution. In
*DPOA* we concluded that the incorporation of a
pension and retirement plan in a city charter did
not obviate the duty under PERA to bargain in
good faith about pension plans. PERA was com-
pared with the home-rule cities act. MCL 117.1 *et
seq.;* MSA 5.2071 *et seq.*

We stated:

"On the one hand the Legislature has adopted PERA
which * * * foreseeably placed retirement plan issues
on the collective bargaining table. On the other hand, it
has allowed cities under the home rule cities act to
incorporate the substance of their retirement plans into

their city charters and to make those plans amendable only by a popular vote." *DPOA,* 391 Mich 64.

This Court, however, avoided finding a complete conflict between PERA and the home-rule cities act. The statutes were reconciled by interpreting the latter to permit a city charter to incorporate only the general outline of a retirement plan. The substantive details and terms of the plan were required to be left to collective negotiation under PERA. The Detroit Charter's substantive detail of a retirement plan was held to have gone beyond the requirement of the home-rule cities act and conflicted with PERA. It was reasoned that the city was required to bargain under PERA about the details of the plan since MCL 117.36; MSA 5.2116 of the home-rule cities act states:

"No provision of any city charter shall conflict with or contravene the provisions of any general law [PERA] of the state."

Furthermore, we rejected the contentions of the City of Detroit that approval by the voters is required under the home-rule cities act to change the substantive details of Detroit's retirement plan.

The civilian trial board provision of the Pontiac Charter was reviewed by this Court in *Pontiac Police Officers Ass'n v Pontiac (After Remand),* 397 Mich 674; 246 NW2d 831 (1976). The City of Pontiac refused to bargain with the association about grievance procedures, invoking the charter which provided that a trial board would review police misconduct charges and impose discipline.

The Court of Appeals decision in *Pontiac* held, *inter alia,* that the charter provision for a trial board was valid and not a mandatory subject of

bargaining under PERA. *Pontiac Police Officers Ass'n v Pontiac*, 50 Mich App 382; 213 NW2d 217 (1973), *lv gtd and vacated* 391 Mich 814; 216 NW2d 759 (1974), *(Supplemental Opinion)*, 54 Mich App 282; 220 NW2d 794 (1974), *(After Remand)*, 397 Mich 674; 246 NW2d 831 (1976). The rationale of the first Court of Appeals decision, adhered to in the *Supplemental Opinion*, was based upon its interpretation of statutory law and the Michigan Constitution.

The Court of Appeals, citing the home-rule provision of the constitution,[5] stated that the management, operation, and control of a city's police department, including discipline of police officers by a trial board, is a municipal concern. Relying upon Act 78 and its authorization to municipalities to create police and fire civil service commissions, the Court of Appeals concluded that "the Legislature has recognized that the management, operation and control of these departments is a matter of local concern". *Pontiac*, 50 Mich App 382, 385. These interpretations formed the basis of the holding that the charter provision for a trial board was not a mandatory subject of bargaining under PERA.

Although three separate opinions were written in *Pontiac (After Remand)*, all of the participating justices agreed that grievance and disciplinary procedures are mandatory subjects of bargaining under PERA. Furthermore, all concurred that

[5] Const 1963, art 7, § 22 provides:

"Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section."

PERA's duty to bargain collectively prevails over conflicting provisions of a home-rule city's charter. Five justices specifically agreed that the duty "to perform in accordance with the terms of a collective bargaining agreement prevails over conflicting [charter] provisions". *Pontiac (After Remand),* 677, 685. It is clear that this Court rejected the Act 78 local concerns analysis of the Court of Appeals and its municipal concerns exception to PERA.

## IV

To decide the present case in conformity with the consistent prior determinations of this Court, PERA must be viewed as the dominant law regulating public employment relations. Although this Court has not previously had occasion to consider the conflicting requirements of the fire and police civil service act in contrast with PERA, our previous decisions compel a conclusion that the provisions of PERA control.

The same policy considerations which have led this Court to conclude that PERA repealed by implication conflicting provisions of the county civil service act in *Wayne County Civil Service Comm,* that it diminished *pro tanto* the teachers' tenure act in *Crestwood,* that it governed promotional criteria in *CMU,* that it controlled university labor negotiations in *EMU* and *U of M* and that it prevailed over charter provisions permitted by the constitution in *DPOA* and *Pontiac (After Remand),* guide us to the conclusion that PERA also governs the instant dispute.

PERA requires a public employer to bargain about promotions, but does not require the public employer to agree to a proposal about promotions made by its employees. MCL 423.215; MSA 17.455(15). If the employer and the union agree to

a change in the promotion system, the collective-bargaining agreement controls promotions. The mandatory bargaining duty of PERA and the need for uniformity, contrasted with the permissive nature of Act 78, lead us to determine that in enacting PERA the Legislature intended the bargaining duty to prevail over Act 78. The promotion system in Act 78 will continue to have effect in municipalities that adopt the civil service system of the act, unless a different system or plan is incorporated in a collective-bargaining agreement.

The original authority and duties of the Police and Fire Civil Service Commission outlined in Act 78 were "diminished *pro tanto*" by PERA "to the extent of free administration" of PERA in the same manner that county civil service commissions had their authority diminished. *Wayne County Civil Service Comm,* 374. The "free administration" of collective bargaining can only be achieved when all subjects of bargaining are included in the collective-negotiation process.

## V

The defendants urge, and the Court of Appeals held, that Article 12 of the collective-bargaining agreement was void and unenforceable. Their rationale is based upon what is perceived to be a conflict between the collective-bargaining agreement authorized by PERA and the local civil service provision of the Michigan Constitution. Const 1963, art 11, § 6 provides:

"By ordinance or resolution of its governing body which shall not take effect until approved by a majority of the electors voting thereon, unless otherwise provided by charter, each county, township, city, village, school district and other governmental unit or author-

ity may establish, modify or discontinue a merit system for its employees other than teachers under contract or tenure. The state civil service commission may on request furnish technical services to any such unit on a reimbursable basis."

Defendants assert that the agreement cannot modify an existing civil service system.

In addition, the defendants argue, and the Court of Appeals determined, that the intent underlying this constitutional provision was to insure that no civil service system for public employees could be modified without a vote of the electorate of the political entity involved. Hence, defendants conclude that a conflict between article 11, § 6 and the collective-bargaining contract must be determined pursuant to that constitutional mandate. We disagree with both conclusions.

In this case, as in other cases that have been decided by this Court with reference to PERA, the public employer premised its claimed exemption from bargaining on some constitutional provision. The basic point of these prior consistent determinations was precisely that action which is otherwise within the authority granted by the constitution is subject to the bargaining obligation under PERA. PERA itself is authorized by article 4, § 48 of the constitution. In view of the fundamental purpose of this constitutional provision which provides for the *Legislature* to enact laws for the resolution of disputes concerning public employees, in each instance when a conflict arose PERA, from its constitutional base, predominated over the conflicting charter, ordinance, or statute and its constitutional foundation.[6]

In this regard, it is significant to note that article 4, § 48 couched in sweeping language the

_____

[6] See the discussion of the exception in fn 4, *supra.*

power of the Legislature to enact laws regarding public employees' disputes. That power is limited in only one particular. The only disputes excepted are "those in the *state* classified civil service". (Emphasis added.) In contrast, article 11, § 6 is a provision that simply permits the establishment, modification, or discontinuance of civil service merit systems in *local political subdivisions* of the state. The scope of article 4, § 48 covers disputes arising in local municipalities, yet the two constitutional provisions may be reconciled.

By its terms, article 11, § 6 does not suggest that a local civil service system must prevail when it conflicts with a collective-bargaining contract or bargaining obligations imposed by a general state law. There is no hint that the scope of article 11, § 6 was intended to limit article 4, § 48 and the applicability of the governing law for public employment relations enacted by the Legislature to resolve public employees' disputes. Nor is there an indication that article 11, § 6 was intended to control collective-bargaining negotiations conducted pursuant to such a law.

In a statutory context, we have mentioned that the Legislature may not have been fully conscious of the need to harmonize collective-bargaining procedures with an established civil service system. Nevertheless, this Court concluded that the purposes of collective bargaining required that the power of civil service be diminished *pro tanto. Wayne County Civil Service Comm, supra.* In a like manner, the Constitutional Convention and the people may not have been fully aware of all the possible conflicts between article 4, § 48 and article 11, § 6 of the constitution. For the same reasons, the collective-bargaining system mandated by PERA under article 4, § 48 should be

held to prevail "to the extent of free administration * * * according to its tenor". *Wayne County Civil Service Comm,* 374. "The public policy of this state as to labor relations in public employment is for legislative determination." *EMU,* 566.

We are not persuaded that the purpose of article 11, § 6 was to prohibit, without an affirmative vote of the electorate, the modification of a local civil service system by a collective-bargaining agreement. Article 4, § 48 and PERA do not require approval by the voters of collective-bargaining contracts. To require it would hinder and frustrate the free administration of PERA.

Clearly, the constitution authorized the Legislature to enact state-wide laws regulating disputes regarding public employees. With regard to local civil service systems, we are convinced a primary purpose of article 11, § 6 was to allow local governments to adopt merit principles by a vote of their electorate without express authorization of or approval by the state Legislature. In addition, this provision would block local political officials from unilaterally changing merit systems and at the same time would protect local employees from political purges. See 1 Official Record, Constitutional Convention 1961, pp 1749-1760.

The purpose of article 11, § 6 is not directed toward the broad power delegated to the Legislature for the resolution of disputes concerning public employees. This Court has uniformly concluded that the home-rule power of public employers is subject to collective bargaining. *Pontiac (After Remand), supra; DPOA, supra.* Where collective bargaining does not exist or where an agreement does not reach issues covered by civil service systems, article 11, § 6 provides a check by the people on the powers of elected officials. However, where

collective bargaining reaches the issues covered by local civil service systems, the restraint on the power of local officials is inherent within the collective-bargaining process.

We are satisfied that the local civil service section of the constitution was not intended to preclude the Legislature from enacting PERA to provide for free and full local collective bargaining, including the vital concerns of promotions and seniority. If this were not the case, PERA, a uniform state-wide law, would be converted into a local-option law. Each locality would cut a wide swath in determining what would be a subject of bargaining in the heart of the bargaining process. In place of the specific exemption of only one group of public employees, the state classified civil service, numerous local public employers would be allowed to opt out of the scheme promulgated by PERA for the resolution of disputes involving mandatory subjects of bargaining, such as promotions and seniority. This would severely erode the sound policies which have led this Court to conclude that PERA and its constitutional source should be the dominant authority governing disputes concerning public employees. *CMU, supra; Crestwood, supra.*

## VI

It is consistent with the tradition of determinations in this state that PERA, promulgated in response to specific constitutional authorization, should take precedence over Act 78 and the Warren City Charter. The scope of article 4, § 48 covers public employment disputes arising in local municipalities. Article 11, § 6 permits the establishment of civil service systems in political subdivisions of the state. A conflict between these two

provisions is reconciled by acknowledging that the public policy of this state as to public employment relations is ultimately for legislative determination. PERA is the product of that determination. Therefore, PERA is the dominant law governing public employment negotiations.

We therefore conclude that Article 12(b) of the collective-bargaining agreement between Local 1383 and the City of Warren is valid. The seniority and promotional provision of the collective-bargaining agreement governs promotions in the Warren Fire Department. Accordingly, we reverse the decisions of the Court of Appeals and circuit court, and remand to the circuit court for entry of summary judgment in favor of plaintiff Local 1383.

No costs, a public question being involved.

KAVANAGH, WILLIAMS, LEVIN, and FITZGERALD, JJ., concurred with BLAIR MOODY, JR., J.

RYAN, J. *(dissenting)*. I dissent from the Court's opinion because, in my view, it erroneously denigrates the constitutionally assured[1] paramount authority of the citizens of the City of Warren to determine at the ballot box, as indeed they have, the kind of public employment system by which they wish to be served.

I adopt as though it were my own the succinct and persuasively sound statement of the Honorable DONALD E. HOLBROOK, JR., who, writing for the Court of Appeals in this case, declared:

"Were the instant conflicts solely between the statutory provisions of PERA and Act 78, we would probably find *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), controlling so as to require a

[1] Const 1963, art 11, § 6.

finding that the provisions of the collective bargaining agreement prevailed over conflicting Civil Service Commission promotional guidelines. However, in the face of conflict with Const 1963, art 11, § 6, we hold that the provisions of the collective bargaining agreement cannot modify or alter an existing civil service system." 89 Mich App 135, 143; 279 NW2d 556 (1979).

COLEMAN, C.J., concurred with RYAN, J.