OAK PARK EDUCATION ASSOCIATION, MEA/NEA v OAK PARK
BOARD OF EDUCATION

Docket Nos. 71814, 71815. Submitted November 4, 1983, at Detroit.—
Decided March 6, 1984. Leave to appeal applied for.

In 1980, the Oak Park Education Association and the Oak Park
School District negotiated a three-year labor contract governing
the years 1980 through 1983, which contained a salary provi-
sion providing that a teacher who is laid off and paid unem-
ployment compensation benefits during the summer immedi-
ately following the layoff and who is subsequently recalled to
the teaching position at the beginning of the next school year
will be paid his annual salary, less the amount of unemploy-
ment compensation benefits that he had received. Prior to the
end of the 1980-1981 and 1981-1982 school years, the Oak Park
School District and Oak Park Board of Education notified
several teachers that they were being laid off. During the
following summers those teachers received unemployment com-
pensation benefits. Subsequently, those teachers were recalled
for the following school year but were told that there would be
deducted from each teacher's salary, in accordance with the
contract, the amount of summer unemployment compensation
each had received. The Oak Park Education Association, MEA/
NEA and the individual teachers filed suits in Oakland Circuit
Court against the Oak Park Board of Education and School
District. The cases were consolidated by the circuit court. The
court, Robert C. Anderson, J., granted summary judgment for
the defendants. The plaintiffs appealed. *Held:*

The public employment relations act prevails over conflicting
legislation and requires the parties within its purview to bar-
gain collectively with respect to wages. The trial court did not
err in granting summary judgment for the defendants. The

REFERENCES FOR POINTS IN HEADNOTES
[1] 48A Am Jur 2d, Labor and Labor Relations § 1764 *et seq.*
[2, 4] 48A Am Jur 2d, Labor and Labor Relations § 1770.
  Bargainable or negotiable issues in state public employment labor
  relations. 84 ALR3d 242.
[3, 4] 76 Am Jur 2d, Unemployment Compensation § 13.

provision in the collective-bargaining agreement between the plaintiffs and the defendants permitting the defendants to deduct the amount of unemployment compensation benefits from the teachers' salaries concerned wages, a mandatory subject of bargaining. That provision does not violate the statutory provision that unemployment compensation benefits are absolutely inalienable by assignment or otherwise.

Affirmed.

1. LABOR RELATIONS — PUBLIC EMPLOYEES.

The public employment relations act is the dominant law regulating public employee labor relations; where there is a conflict between the public employment relations act and another statute the PERA prevails, diminishing the conflicting statute *pro tanto* (MCL 423.215; MSA 17.455[15]).

2. LABOR RELATIONS — PUBLIC EMPLOYEES — WAGES.

Wages are a mandatory subject of collective bargaining under the public employment relations act (MCL 423.215; MSA 17.455[15]).

3. UNEMPLOYMENT COMPENSATION — TEACHERS.

Teachers are allowed to collect unemployment compensation where they have no reasonable assurance of returning to work (MCL 421.27[i]; MSA 17.259[i]).

4. LABOR RELATIONS — UNEMPLOYMENT COMPENSATION — TEACHERS.

A provision in a collective-bargaining agreement between teachers and a school district allowing the school district to deduct from a recalled teacher's salary the amount of any unemployment compensation benefits received by the teacher during the previous summer while the teacher had been laid off is not invalid because wages are a mandatory subject of collective bargaining under the public employment relations act (MCL 423.215; MSA 17.455[15]).

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann* and *Eli Grier),* for plaintiffs.

*Butzel, Long, Gust, Klein & Van Zile* (by *Virginia F. Metz* and *David B. Calzone),* for defendants.

Before: BRONSON, P.J., and SHEPHERD and J. P. SWALLOW,* JJ.

PER CURIAM. In 1980, plaintiff Oak Park Education Association and defendant Oak Park School District negotiated a three-year labor contract governing the years 1980 through 1983. The collective-bargaining agreement contained a new salary provision, Article 14.19:

> "14.19. A teacher who is laid off under provisions other than 14.18 above and who is paid unemployment compensation benefits (associated with his or her regular teaching assignment) during the summer immediately following the layoff and who is subsequently recalled to the teaching position at the beginning of the next school year will be paid according to an annual salary rate, such that his/her unemployment compensation plus that annual salary rate will be equal to the rate of salary he/she would have earned for the school year had he/she not been laid off, subject to the following conditions:
>
> "(a) The total of unemployment compensation plus salary earned by employment in the district shall not be below that which the employee would have received had he or she been employed the entire school year.
>
> "(b) The salary earned through employment in the district shall not be less than his or her salary from same for a similar period during the preceding school year."

This provision was evidently added in response to the addition to the Michigan Employment Security Act (MESA) on January 1, 1978, of § 27(i) which permitted teachers to collect unemployment benefits during the summer months between two academic years when the teachers had no "reason-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

able assurance" of employment for the latter of the two academic years.

Because school districts are often unsure of their finances for the upcoming academic year due to fluctuating pupil enrollment and uncertain state and local funding, they often lay off more teachers in April than will remain laid off in September. Layoff notices are distributed in April, apparently to accommodate the notice and hearing provisions of the teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.,* and the parties' collective-bargaining agreement.

The individually named plaintiffs in the instant case are teachers who were employed by defendants during the 1980-1981 and/or 1981-1982 school years. Each teacher was advised in writing prior to the end of that school year that he or she was being laid off. During the summer months, plaintiff teachers collected unemployment benefits through the Michigan Employment Security Commission (MESC).

During the summer, or within two weeks after school began the following fall, the teacher plaintiffs were recalled to work by defendants. Each returned at the salary level appropriate to his or her experience and education as established by the parties' contract. Subsequently, each individual plaintiff was notified by defendants that there would be deducted from the annual salary prescribed for each plaintiff an amount equivalent to that which each had received the past summer in unemployment benefits from the MESC. By its letter of April 30, 1982, the MESC notified defendants that this planned practice violated the Michigan Employment Security Act.

Plaintiffs' subsequent suits against defendants were consolidated in the trial court. Upon cross-

motions for summary judgment, apparently pursuant to GCR 1963, 117.2(1), the trial court entered its judgment in favor of defendants, concluding that the language of MCL 421.31; MSA 17.533 was subservient to the agreement entered into by plaintiffs and defendants, an agreement which was under the auspices of the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.*

On appeal, plaintiffs argue that Article 14.19 of the parties' contract requires teachers to waive unemployment benefits contrary to law. MCL 421.30; MSA 17.532 provides that unemployment compensation benefits are absolutely inalienable by "any assignment * * * or otherwise". MCL 421.31; MSA 17.533 provides that "no agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this act from an employer shall be valid". Since the parties' contract provides in Article 26.1 that all contractual provisions therein are to be "subject in all respects to the laws of the State of Michigan", plaintiffs contend that Article 14.19 must be excised from the contract.

Defendants, on the other hand, contend that Article 14.19 was a salary provision negotiated under the auspices of PERA, MCL 423.215; MSA 17.455(15). In cases of possible statutory conflict, argue defendants, PERA is controlling where, as here, the subject of bargaining is not illegal. The provisions of MESA and PERA, argue defendants, should be construed reasonably and compatibly.

PERA requires the parties to those contracts within its purview to bargain collectively "with respect to wages, hours, and other terms and conditions of employment". MCL 423.215; MSA 17.455(15). The Michigan Supreme Court has "con-

sistently construed the PERA as the dominant law regulating public employee labor relations". *Detroit Bd of Ed v Parks,* 417 Mich 268, 280; 335 NW2d 641 (1983), quoting *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616, 629; 227 NW2d 736 (1975), *app dis sub nom Crestwood Ed Ass'n v Bd of Ed,* 427 US 901 (1976). When there is conflict between PERA and another statute, "PERA prevails, diminishing the conflicting statute *pro tanto". Detroit Bd of Ed v Parks, supra,* p 280; *Local 1383, International Ass'n of Fire Fighters, AFL-CIO v City of Warren,* 411 Mich 642; 311 NW2d 702 (1981). As the Court said in *City of Warren, supra,* p 655, it has "consistently held that PERA prevails over conflicting legislation, charters, and ordinances in the face of contentions by cities, counties, public universities, and school districts that other laws or the constitution carve out exceptions to PERA".

As noted, wages are a mandatory subject of collective bargaining under PERA.

Article 14.19 of the contract in the instant case clearly concerns wages and was the subject of collective bargaining between the parties. Although plaintiffs interpret this provision as a waiver of unemployment compensation benefits and illegal even under PERA, we agree with defendants' interpretation of the provision: that it is one governing total salary rather than one requiring a waiver of benefits. If anything, Article 14.19 provides for a partial waiver of salary rather than a waiver of unemployment compensation. Nothing in the provision requires teachers to waive, or in any way restrict, their rights under the MESA. Plaintiff teachers were allowed under the law and under the terms of this contract to collect unemployment benefits when they were laid off. Once

they had been recalled for the upcoming academic year, however, their salary could be properly adjusted so that their total compensation for the academic year remained that set by contract according to seniority and education, whether they had collected unemployment benefits or not. This plan ensures that teachers with more seniority who are not laid off are not ultimately paid less than those teachers who teach all year after being provisionally laid off during the summer months, a time when teachers are not actively employed in their academic jobs under normal conditions. We see neither illegality nor injustice in this result.

Teachers are allowed to collect unemployment compensation where they have no reasonable assurance of returning to work. MCL 421.27(i); MSA 17.529(i). This statute is designed to provide economic protection for those teachers who will not be recalled at the start of the school year. Article 14.19 provides that each recalled teacher is assured of earning his or her full annual salary; those teachers who are not recalled, *i.e.*, are truly unemployed, collect the full amount of unemployment compensation to which they are entitled.

Laid-off teachers must be aware that they may be recalled in the fall. Early and tentative layoff notices are, in fact, generally required by contract, as is true in the instant case. In this sense, those in the teaching profession enjoy a unique status among employees who are allowed to collect unemployment compensation. "Unemployment" in this case is often ultimately a fiction, a status prescribed to ensure teachers maximum economic protection in the face of future uncertain school district financing. By contract the parties agreed that to permit those teachers who have been allowed to collect benefits as a protective measure to

earn substantially more than those teachers who avoid layoff would be unfair. The laid-off and recalled teachers have not actually missed any work, nor has their total annual salary been reduced from that which they would have earned had they not received a layoff notice. In order to avoid inequity, then, and to prevent what amounts to essentially double payment by defendants (since unemployment compensation is substantially paid by employers with the state acting as agent), we see nothing wrong or illegal in permitting the parties to adjust, by mutual agreement, total salaries, taking into account all compensation received by plaintiffs directly or indirectly from defendants during the year. Article 14.19 merely establishes a formula whereby the salary for the nine-month school year may be adjusted to reflect the actual employment status of plaintiff teachers.

Since we do not interpret Article 14.19 as requiring a waiver of unemployment compensation, we do not find that the provision violates MCL 421.30; MSA 17.532 or MCL 421.31; MSA 17.533. We do find the provision to be one concerning wages and, therefore, a mandatory subject of collective bargaining between the parties. This provision was, therefore, properly included in the parties' contract pursuant to PERA. If the parties prefer another result they are free to delete Article 14.19 of the contract in future negotiations.

Affirmed.

No costs, a public question being involved.